TENAN et al., Appellees and Cross–Appellants,

v.

HUSTON; UHHS Brown Memorial Hospital, Appellant and Cross–Appellee.

[Cite as *Tenan v. Huston*, 165 Ohio App.3d 185, 2006-Ohio-131.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2004–A–0006.

Decided Jan. 13, 2006.

David E. Pontius and Pamela D. Houston, for appellees and cross-appellants.

Michael L. Golding and Kevin M. Norchi, for appellant and cross-appellee.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Defendant-appellant and cross-appellee, UHHS Brown Memorial Hospital ("UHHS"), appeals the trial court's judgment entry granting the motion of plaintiffs-appellees and cross-appellants, Janice Tenan and others, to discover

certain undisclosed documents pertaining to Dr. Gary Huston's medical privileges at UHHS. In addition, Tenan cross-appeals the same judgment entry to the extent that the order failed to sufficiently define the documents it determined fell outside the statutory privilege for peer review documents. For the reasons herein, we reverse the judgment and remand the matter.

{¶ 2} On June 7, 2002, Tenan filed a complaint against UHHS and Dr. Huston alleging that Dr. Huston was negligent when, in the course of performing a laparoscopic hysterectomy upon her, he sliced her bladder and failed to repair it. The complaint also alleged that UHHS was negligent in credentialing Dr. Huston.

{¶ 3} On March 4, 2003, Tenan served UHHS with a combined first set of interrogatories and request for production of documents, which sought information from UHHS's quality assurance/peer review committee concerning records relating to Dr. Huston. On April 17, 2003, UHHS responded to Tenan's discovery requests, but objected to the interrogatories and document requests concerning Dr. Huston's credentialing on the basis of the peer review privilege set forth in former R.C. 2305.24, 2305.25, and 2305.251.

{¶ 4} The trial court held an in camera review of the documents in question. On January 16, 2004, the court filed its judgment entry, stating:

{¶ 5} "Pursuant to Ohio case law, including but not limited to *Trangle* [*v. Rojas*, 150 Ohio App.3d 549, 2002-Ohio-6510, 782 N.E.2d 617] and R.C. 2305.24, the following documents in the confidential file of Dr. Huston, listed by Bates No. are *not* discoverable information to the Plaintiffs:

{¶ 6} "BMH # 's 6 through 26, 245–248, 255, 313, 314, 331, 411 through 479, 482 through 648. All other documents in Dr. Huston's file * * * are not privileged and are discoverable." (Emphasis sic.)

{¶ 7} On January 28, 2004, Tenan filed a motion to define the January 16, 2004 judgment entry. Specifically, Tenan had no access to the Bates-numbered documentation and, therefore, moved the court for clarification of which requested documents were discoverable. On February 13, 2004, UHHS moved the court to reconsider its January 16, 2004 judgment entry and also moved to oppose Tenan's motion to define the judgment. The record contains no judgment entry regarding these motions. On February 17, 2004, UHHS filed its notice of appeal, and on February 25, 2004, Tenan filed her notice of cross-appeal.

{¶ 8} In its appeal, UHHS asserts the following assignment of error:

{¶ 9} "The trial court abused its discretion in issuing a judgment entry ordering production of certain documents contained in the confidential credentialing file for Gary Huston, D.O. which were subject to and protected from discovery under the Ohio Peer Review Statutes (sections 2305.24 – 2305.251)."

{¶ 10} Under its sole assignment of error, UHHS asserts four issues for our review:

{¶ 11} "[1.] Does the peer review privilege apply to all information and documents presented to a credentialing/peer review committee?

{¶ 12} "[2.] Does the peer review privilege apply only to documents that a hospital credentialing committee created or produced during the credentialing/peer review process?

{¶ 13} "[3.] Does R.C. 2305.251 require a party seeking discovery of information and documents from a credentialing/peer review committee to obtain such discovery from an 'original, outside source'?

{¶ 14} "[4.] Is a trial court required to provide an explanation of reasoning for decisions made regarding the discoverability or application of privilege to documents submitted for in camera review?"

{¶ 15} UHHS's first three issues pose questions that inherently reflect one another. These issues ask this court to determine whether, in light of the statutory privilege set forth in former R.C. 2305.24, 2305.25, and 2305.251, the trial court erred when it ordered UHHS to disclose certain documents contained in Dr. Huston's "quality assurance/peer review records" pursuant to Tenan's discovery request. We shall address issues one through three together.

{¶ 16} An appellate court reviews a trial court's discovery orders under an abuse-of-discretion standard.[1] A court abuses its discretion when its ruling reflects an unreasonable, arbitrary, or unconscionable attitude toward the issue(s) on which it is ruling.[2]

{¶ 17} On March 4, 2003, Tenan served UHHS with her first set of interrogatories and a request for the production of documents, which sought information regarding the credentialing process of Dr. Huston. Over objection, the court held an in camera review and ordered that certain documents were discoverable.

{¶ 18} On appeal, UHHS argues that the court erred and that any documents used during or produced from its credentialing process are privileged and not discoverable. In response, Tenan argues that Ohio courts have consistently recognized that documents "otherwise obtainable from original sources" are not privileged. Accordingly, any documents fitting this description can be discovered from the hospital, irrespective of whether they were used in the peer review credentialing process.

---

1. *Wescott v. Associated Estates Realty Corp.*, 11th Dist. Nos. 2003–L–059 and 2003–L–060, 2004-Ohio-6183, 2004 WL 2647582, at ¶ 17.

2. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 19} Civ.R. 26(B)(1) prohibits the discovery of privileged documents. R.C. 2305.24, as it was codified at the time the instant lawsuit was filed, provided that "[a]ny information, data, reports, or records made available to a quality assurance committee * * * shall be confidential." Further, R.C. 2305.251, as it was codified at the time the instant lawsuit was filed, underscored confidentiality of "[p]roceedings and records of all review committees." The statute further specified that all such proceedings and records "shall not be subject to discovery or introduction in evidence in any civil action * * *." However, the statute continued:

{¶ 20} *"Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a [review board ] committee* nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within the person's knowledge, but the witness cannot be asked about the witness's testimony before the committee or opinion formed by the witness as a result of the committee hearing." (Emphasis added.)

{¶ 21} On April 9, 2003, the General Assembly revised former R.C. 2305.251. R.C. 2305.251 was subsequently renumbered and became current R.C. 2305.252. Currently, R.C. 2305.252 provides:

{¶ 22} "Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, *but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records."* (Emphasis added.)

{¶ 23} Current R.C. 2305.252 manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings. The language of the statute demonstrates that a party interested in obtaining information used by a peer review committee that was generated from another original source must seek such information from that source, and not from the records of the committee's proceedings.

{¶ 24} At the time of the suit, plaintiffs were permitted, pursuant to former R.C. 2305.24, 2305.25, and 2305.251, to discover nonconfidential documents that were relied upon by the hospital in extending privileges to doctors. Conversely, the hospitals were permitted to claim a privilege relating to confidential peer review activities. As stated by the Seventh Appellate District:

{¶ 25} " 'The purpose of peer review and quality assurance is to allow independent third parties to review both the individual and team performance of health care providers in an effort to improve the overall quality of health care.' * * * However, if all materials viewed and utilized by peer review committees were deemed undiscoverable, a hospital could never be held accountable for its choice in staffing by truly independent third parties.

{¶ 26} "This is precisely why courts continue to recognize the tort of negligent credentialing: so that hospitals may be held accountable by third parties for the breach of their duty to hire only competent physicians." [3]

{¶ 27} The theory behind peer review is predicated upon the duty of hospitals to provide quality control by protecting patients from unqualified physicians. As stated by the Supreme Court of Ohio, "[a] hospital has a direct duty to grant and to continue such privileges only to competent physicians." [4]

{¶ 28} In balancing the need to protect privileged information, while providing injured parties access to credentialing information, the courts have interpreted former R.C. 2305.251 to permit an in camera inspection of the documents in question, as was done in this matter. As stated by the Eighth Appellate District:

{¶ 29} "Thus, any documents generated by the hospital for peer review purposes are privileged under the statute. As previously stated, any documents available from their original sources are discoverable from a hospital, in this case, Lutheran Hospital.

{¶ 30} "The trial court in this case ordered Lutheran to provide complete responses to all of the Trangles' interrogatories and request for production of documents without regard to privileged materials. When a trial court is presented with a situation in which a party attempts to prevent the introduction of certain evidence by asserting the privilege defined in R.C. 2305.251, it is incumbent upon the trial court to hold an in-camera inspection of the information, documents, or records in question to determine the admissibility of the evidence in relation to R.C. 2305.251.[5] The trial court should have conducted an in camera inspection to determine which information, documents, or records were

3. *Wilson v. Barnesville Hosp.*, 151 Ohio App.3d 55, 2002-Ohio-5186, 783 N.E.2d 554, at ¶ 23–24, quoting *McCarthy v. W. Res. Care Sys.* (June 11, 1999), 7th Dist., No. 97 C.A. 76, 1999 WL 420578, *4.

4. *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus (overruled on other grounds, *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46).

5. *Gates v. Brewer* (1981), 2 Ohio App.3d 347, 351, 2 OBR 392, 442 N.E.2d 72.

discoverable and which were privileged. Failure to conduct such an in camera inspection constitutes an abuse of discretion." [6]

{¶ 31} Thus, it is clear that as of the date of the filing of this lawsuit, plaintiffs had a qualified right, established by statute, to the information contained within peer review committee files maintained by hospitals.

{¶ 32} On April 9, 2003, the Ohio General Assembly revised the peer review statutory framework and essentially built an impenetrable wall of secrecy around all peer review documents, participants, and proceedings.

{¶ 33} As stated by the Fifth Appellate District:

{¶ 34} "[T]his order violates the clear intention of the statute. The statute states that such records will be held in confidence and shall not be subject to discovery. It even goes so far as to state that individuals who attend a meeting of a peer review committee or provide information to a peer review committee shall not be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings. The trial court's order for the hospital to give appellee information from which the documents can be identified, allows appellee to discover what documents were before the committee. We find that the statute makes all information regarding such documents privileged and unobtainable from the hospital. As Aultman Hospital concedes, appellee can obtain these documents from original sources. However, pursuant to R.C. 2305.252, appellee cannot obtain information concerning these documents from the hospital. As such, we find that the trial court erred when it ordered Aultman Hospital to provide a list identifying the documents to appellee." [7]

{¶ 35} The Ninth Appellate District Court reached a similar result when it held:

{¶ 36} "In this case, the language of R.C. 2305.252 must be given its plain meaning.[8] The legislature has left no doubt regarding whether these documents are obtainable from appellant. They clearly are not. We find that the trial court abused its discretion in ordering the documents in question to be disclosed by appellant in violation of a clear statutory mandate prohibiting such disclosures. Although the documents may otherwise be discoverable and obtained from their

---

6. *Trangle v. Rojas*, 150 Ohio App.3d 549, 2002-Ohio-6510, 782 N.E.2d 617, at ¶ 34–35.

7. *Huntsman v. Aultman Hosp.*, 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384, at ¶ 27.

8. *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743.

original sources, they may not be obtained from appellant's peer review proceedings or records." [9]

{¶ 37} Regrettably, we must concede that the law of Ohio, as currently written by the legislature and interpreted by the courts, does in fact grant hospitals an impenetrable wall of secrecy surrounding the credentialing of doctors. Caveat emptor has taken on a whole new meaning for patients who trust the name on the building when they enter there for health care.

{¶ 38} Such an analysis, however, does not answer the question raised in this appeal. The trial court properly granted the in camera review, which was clearly mandated by the old statute. The only way the new statute, which prohibits in camera review, can be applied to this matter is if retroactive application of R.C. 2305.252 is granted.

{¶ 39} We recognize that the Fifth Appellate District has held that the statutory changes to former R.C. 2305.251, resulting in current R.C. 2305.252, were procedural, rather than substantive, in nature.[10] For the following reasons, we disagree.

{¶ 40} As stated by the Supreme Court of Ohio:

{¶ 41} "It is doubtful if a perfect definition of 'substantive law' or 'procedural or remedial law' could be devised. However, the authorities agree that, in general terms, substantive law is that which creates duties, rights, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress." [11]

{¶ 42} It is clear that prior to the amendment of the peer review statutes in Ohio, plaintiffs had a limited right of access to documents in a hospital's peer review records.[12] By amending the statute, the Ohio legislature took away that right. Since the action removed a statutory right, the revisions were substantive in nature. Thus, we respectfully disagree with the Fifth Appellate District on the question of retroactivity.

{¶ 43} As stated by the Third Appellate District, "[i]f the statute change is substantive, the constitution prohibits retrospective application, whereas if the statute is procedural, the statute, as amended, would apply to any cause of action

---

9. *Hammonds v. Ruf,* 9th Dist. No. 22109, 2004-Ohio-6273, 2004 WL 2674609, at ¶ 11.

10. *Huntsman v. Aultman Hosp.,* supra, at ¶ 20.

11. (Citations omitted.) *State ex rel. Holdridge v. Indus. Comm.* (1967), 11 Ohio St.2d 175, 178, 40 O.O.2d 162, 228 N.E.2d 621.

12. *Trangle v. Rojas,* at ¶ 34–35.

before its effective date."[13] It is clear that the legislature may not take away a substantive right retroactively.

{¶ 44} The trial court properly granted in camera review, as approved in *Trangle v. Rojas*, which was the law of Ohio when this matter was filed.[14] The Ohio General Assembly's subsequent eradication of that right to have an in camera review of the disputed documents has no effect on this litigation, as it was pending at the time of the amendment. UHHS's first three issues are accordingly addressed and answered by the foregoing analysis.

{¶ 45} Finally, UHHS's fourth issue asks whether a trial court is required to provide an explanation for decisions made regarding the discoverability or application of privilege to documents submitted for in camera review.[15] In *Doe v. Mt. Carmel Health Sys.*, the Tenth Appellate District held, as part of an in camera inspection, the trial court must articulate its reasoning for determining which documents are privileged and which are subject to the "original source" exception.[16] The court stated:

{¶ 46} "Although the trial court conducted an in camera inspection of the documents in dispute and allowed disclosure of certain documents to the plaintiff, the trial court did not articulate in its final order its reasons for the decision. * * * [I]n neither opinion does the court state its reasoning for determining which documents were privileged or whether an exception to the privilege applies. If the court relied upon the original source exception for some of the documents and not others, neither opinion demonstrates how the court came to that conclusion, specifically how the documents were available from the original source."[17]

{¶ 47} The court in *Doe* reversed the judgment and remanded the matter for the trial court to state its reasons for "distinguishing discoverable and non-discoverable documents and if a privilege applies, and whether there is an applicable exception to that privilege."[18] Because that reasoning is necessary to determine whether the trial court fairly applied the privilege as well as the "other

---

13. *Rumery v. Myles* (Aug. 8, 1983), 3d Dist. No. 7–83–1, 1983 WL 7315, at *2.

14. *Trangle v. Rojas*, supra.

15. Coincidentally, this issue mirrors one of the arguments raised by Tenan in her cross-appeal.

16. *Doe v. Mt. Carmel Health Sys.*, 10th Dist. No. 03AP–413, 2004-Ohio-1407, 2004 WL 557333.

17. Id. at ¶ 16.

18. Id.

source" exception, we find UHHS's final argument persuasive. Therefore, on this basis, we sustain UHHS's fourth assignment of error.

{¶ 48} In her cross-appeal, Tenan asserts the following assignment of error:

{¶ 49} "Whether the trial court, when conducting an in camera interview as a result of the assertion of the peer review privilege must articulate with sufficiency its basis for each document's protection or non-protection of the peer review privilege and identify the documents for each party's reference?"

{¶ 50} On January 16, 2004, subsequent to an in camera inspection of the quality assurance/peer review records of Dr. Huston, the trial court filed its judgment entry regarding the discoverability of various records. The trial court ordered:

{¶ 51} "[T]he following documents, in the confidential file of Dr. Huston, listed by Bates No. are not discoverable information to the Plaintiffs:

{¶ 52} "BMH # 's 6 through 26, 245–248, 255, 313, 314, 331, 411 through 479, 482 through 648. All other documents in Dr. Huston's file, provided for in camera inspection, are not privileged and are discoverable."

{¶ 53} On January 28, 2004, Tenan filed a motion for the trial court to define its January 16, 2004 judgment entry. The motion was opposed by UHHS on February 13, 2004. The record does not contain a judgment entry on Tenan's motion. However, "if a trial court fails to specifically rule on a motion * * *, it is presumed the trial court has overruled that motion." [19]

{¶ 54} This court, like Tenan, has no way of knowing the precise nature of the documents the court deemed discoverable. Moreover, even if the trial court had provided some indication of the documents' general identity, the court failed to set forth a basis for its determination, thereby preventing a meaningful review of its application of the privilege or the "original source" exception.

{¶ 55} With respect to the privilege issue, we hold that the trial court is required to provide a generic identification of the documents in question. The identification must be general, so as not to reveal any substantive information within the document; however, the court must sufficiently identify the document(s) in order to give the parties an opportunity to set forth precise objections to the court's ruling and thereby preserve issues for appeal. Similarly, as our resolution of UHHS's fourth issue reflects, the trial court should set forth its reasoning for permitting the discovery of the documents it deems discoverable. That reasoning is necessary for an appellate court to review the trial court's

---

19. *Niepsuj v. Niepsuj*, 9th Dist. No. 21888, 2004-Ohio-4201, 2004 WL 1778883, at ¶ 10.

decision regarding its application of the "original source" exception.[20] Thus, Tenan's cross-appeal is sustained. On remand, the trial court should set forth a general identification of all documents it reviewed and state its reasons for applying the privilege and/or the "original source" exception to those documents.

{¶ 56} For the above reasons, UHHS's sole assignment of error is sustained and Tenan's cross-appeal is sustained. Accordingly, the judgment of the Ashtabula Court of Common Pleas is hereby reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

COLLEEN MARY O'TOOLE, J., concurs.

CYNTHIA WESTCOTT RICE, J., dissents.

CYNTHIA WESTCOTT RICE, Judge, dissenting.

{¶ 57} I agree with the majority that current R.C. 2305.252 acts to prohibit the discovery of any documentation from a hospital to the extent it was used in the peer review process. However, because I believe that the statute sets forth a procedural rather than substantive right, I would hold the statute to apply retroactively.

{¶ 58} Current R.C. 2305.252 provides:

{¶ 59} "Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, *but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.*" (Emphasis added.)

{¶ 60} The statute manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings. The language of the statute demonstrates that a party interested in obtaining information used by a peer review committee generated from another original source must seek such information from that source and not from the records of the committee's proceedings.

{¶ 61} Retroactive application of a statute is generally impermissible absent an express provision in the statute indicating the statute shall so apply. R.C. 1.48. *Curry v. Curry* (Sept. 26, 2001), 4th Dist. No. 01CA10, 2001-Ohio-2601, 2001 WL 1287163, *2. However, the Supreme Court of Ohio has delineated an exception to this general rule: "In construing R.C. 1.48, * * * this court has consistently held

20. See *Doe v. Mt. Carmel Health Sys.,* supra.

that the application of a statute, which affects procedural rather than substantive rights, to causes arising prior to the statute's effective date but tried thereafter is not an impermissible retroactive application." *Viers v. Dunlap* (1982), 1 Ohio St.3d 173, 174, 1 OBR 203, 438 N.E.2d 881 (overruled on other grounds in *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185), discussing *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 11 O.O.3d 290, 387 N.E.2d 231, and *Kilbreath v. Rudy* (1968), 16 Ohio St.2d 70, 45 O.O.2d 370, 242 N.E.2d 658.

{¶ 62} While there is no simple way by which a court might distinguish substantive law from procedural law, authorities agree that "substantive law is that which creates duties, rights, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress." *State ex rel. Holdridge v. Indus. Comm.* (1967), 11 Ohio St.2d 175, 178, 40 O.O.2d 162, 228 N.E.2d 621. Thus, when a court determines that a statute read in terms of its revision is procedural, it may apply retroactively to causes arising prior to its effective date but tried thereafter. *Viers,* supra.

{¶ 63} I believe that the revisions in the statute are procedural and thus may be properly applied retroactively. In arriving at this conclusion, I would adopt the Fifth Appellate District's holding in *Huntsman v. Aultman Hosp.,* 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384. In *Huntsman,* the court noted that the statute does not impair the substantive law or the substantive right of a plaintiff to bring a cause of action, but only limits the admissibility of some evidence.[21] Further, the court held:

{¶ 64} "The change in the statute that which is relevant to this case pertains to the Ohio Legislature's apparent decision to foreclose a party from obtaining any information, documents or records from the peer review committee's records. Previously, courts had interpreted the prior version of the statute (R.C. 2305.251) to allow a trial court to conduct an in camera review of the peer review committee's records to determine whether the privilege applied to individual documents. If the record was available from its origin[al] source, it was not

---

21. Tenan disagrees with this observation; she asserts that affording a review committee's records absolute confidentiality will encumber a party's right to bring a negligent-credentialing claim against a hospital. In her view, a claimant will be unable to determine (and hence obtain) the sort of information a hospital used in awarding the physician privileges or other credentials he or she possessed. I find Tenan's position unpersuasive. While a claimant may not obtain information from the hospital's peer review committee itself, there is nothing that prohibits a claimant from seeking information from the physician. In fact, a physician would be a fine "outside, original source" for information or records concerning his or her education, medical training, licensing, as well as information regarding any past lawsuits or disciplinary actions, etc. Thus, in my estimation, a claimant may successfully pursue his or her negligent-credentialing claim without the benefit of discovery of the confidential records of a peer review committee.

privileged and could be obtained from the peer review committee's records. * * * The current version of the statute makes it clear that there is no need for an in camera inspection because no documents can be obtained from the peer review committee records, only from the records of the original source of the information. We view this relevant revision to be a clarification of the statute's intent. Since this change affects only how information is to be obtained, we find the change to be procedural." (Citations omitted.) *Huntsman*, supra, at ¶ 20. See, also, *Hammonds v. Ruf*, 9th Dist. No. 22109, 2004-Ohio-6273, 2004 WL 2674609, at ¶ 11.

{¶ 65} Accordingly, while we do not know the precise nature of the documents reviewed in the trial court's in camera inspection, we do know that the documents were issued from the hospital's "Quality Assurance/Peer Review" records. Hence, the records reviewed by the court in camera were "produced or presented during proceedings of a peer review committee." Therefore, I would hold that the trial court abused its discretion in inspecting and ordering the documents in question to be discoverable in violation of the statutory mandate set forth in R.C. 2305.252. Accordingly, I would sustain UHHS's sole assignment of error.

{¶ 66} As a result, I would also hold Tenan's cross-appeal moot. That is, while we have no way of knowing the precise nature of the documents the court deemed discoverable, neither Tenan nor this court should be privy to the character and substance of the documents, as they are confidential pursuant to R.C. 2305.252. In effect, the retroactive application of current R.C. 2305.252 acts to prevent a trial court from reviewing *any* peer review committee records in camera. As the trial court erred in conducting an in camera inspection of the confidential records in the first place, an analysis as to whether it was required to release specified document titles resulting from its inspection would be inappropriate.

{¶ 67} In sum, I would sustain UHHS's sole assignment of error, but for reasons wholly different from those expressed in the majority's opinion; further, because my position would preclude an in camera review of the documents in question, I would additionally hold Tenan's cross-appeal to be moot.