OPINION
{¶ 1} Plaintiffs-appellants, Lauren Weir (a minor) and Lorraine Donaldson (Weir's mother), appeal the judgment of the Trumbull County Court of Common Pleas, granting a directed verdict in favor of defendant-appellee, Krystie's Dance Academy. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On March 8, 2005, appellants filed a Complaint against Krystie's Dance Academy. On August 17, 2005, a Verified Amended Complaint was filed. On *Page 2 
December 19, 2005, a Second Verified Amended Complaint was filed, alleging the following: Weir, age fifteen at the time the Second Amended Complaint was filed, was a dance student at Krystie's. The biography of Krystie's Director, Krystie Whetstone-Sutch, portrayed her as "a positive role model for her child students." Donaldson paid Krystie's monies for tuition and for dancing paraphernalia. An express part of the contract between Donaldson and Krystie's was that Weir "would be treated like the other kids" and was "not to be isolated because of a weight problem."
 {¶ 3} The Second Amended Complaint further alleges: In September 2004, Whetstone-Sutch told Weir that she would be blended into "larger groups" because of her size. Whetstone-Sutch placed Weir in competition teams based on her weight rather than her dancing ability. Whetstone-Sutch told Donaldson that Weir could not "wear (the) skimpier costumes until she toned down." Whetstone-Sutch also made comments regarding the genetic make-up of Weir's family, the way Donaldson fed her family, and what it would be like to have a weight problem. Finally, it was alleged that members of Whetstone-Sutch's family "published" statements to the effect that "anyone who goes to (Lauren's current dance academy) is fat and only the skinny girls go to Krystie's."
 {¶ 4} The complaint pled causes of action for breach of contract, negligence and intentional infliction of emotional distress.
 {¶ 5} Krystie's Dance Academy answered and denied the substance of the plaintiffs' allegations.
 {¶ 6} On March 22, 2007, counsel for the plaintiffs filed two Precipes for Subpoena with the trial court. The first was directed to Diana Whetstone (Whetstone-Sutch's mother), and stated she is "required to be and appear before the Trumbull *Page 3 
County Common Pleas Court * * * on the 26th day of March, 2007 at 12:00 p.m., on behalf of the Plaintiffs Lauren Weir, a Minor et al., and to produce fiscal year 2006 financial records for Krystie's Dance Academy, LLC." The second precipe was directed to Krystie Whetstone-Sutch, and stated she is "required to be and appear before the Trumbull County Common Pleas Court * * * on the 26th day of March, 2007 at 12:00 p.m., on behalf of the Plaintiffs Lauren Weir, a Minor et al., and to produce the Dear Dancer letter with signature of Lorraine Donaldson * * *." Both precipes indicated that they were "hand delivered" on March 22, 2007. The record gives no indication of the location where the precipes were hand delivered.[1]
 {¶ 7} On March 26, 2007, Krystie's filed a Defendant's Motion to Quash the precipes on the grounds that a precipe is not a subpoena as provided for in Civ.R. 45, the precipes do not contain the language required by Civ.R. 45(A)(1)(c) for a valid subpoena, the precipes were not served in the manner prescribed by Civ.R. 45(B), and the precipes were not filed with the clerk of courts as required by R.C. 2303.11.
 {¶ 8} Krystie's also filed a Defendant's Motion in Limine to prevent plaintiffs from attempting to introduce matters alleged "scandalous and irrelevant" and Defendant's Trial Memorandum.
 {¶ 9} On March 27, 2007, trial commenced. On the same day, at the close of plaintiffs' case, Krystie's moved for and was granted a directed verdict on the claim for intentional infliction of emotional distress, and partially granted on the breach of contract claim. Plaintiffs thereupon dismissed the remainder of their breach of contract *Page 4 
claim.[2] On March 28, 2007, the trial court entered a Judgment Entry granting judgment in favor of Krystie's Dance Academy and dismissing the case at plaintiffs' cost. This appeal timely follows.
 {¶ 10} Plaintiffs raise the following assignments of error:
 {¶ 11} "[1.] The trial court acted to the prejudice of plaintiffs in it's grant of a motion to quash a subpoena prior to trial and as falsely, materially and knowingly presented.
 {¶ 12} "[2.] The trial court erred to the prejudice of plaintiffs-appellants in the biased application of it's standing order.
 {¶ 13} "[3.] The trial court erred to the prejudice of plaintiffs-appellants in it's incorrect holding as to psychological testimony adduced at trial.
 {¶ 14} "[4.] The trial court erred to the prejudice of appellants in it's Rule 50 holding as to emotional trauma to be demonstrated under an intentional infliction of emotional distress claim."
 {¶ l5} Before discussing appellants' assignments of error, we must recognize that appellants have not filed a complete transcript of the proceedings in the trial court. The transcript filed with this court only contains the testimony of Dr. Sandra Foster and the arguments relative to Krystie's motion for directed verdict. The filing of a partial transcript is permitted by the Appellate Rules. See App.R. 9(B).
 {¶ l6} A court of appeals, however, is "limited to a review of the record on appeal, consisting of `[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the *Page 5 
docket and journal entries prepared by the clerk of the trial court.'"Garnett v. Nationwide Property Ins., 8th Dist. No. 88500,2007-Ohio-2774, at ¶ 9, citing App.R. 9(A); In re K.W., 9th Dist. No. 23613, 2007-Ohio-3626, at ¶ 3. In the absence of a complete record on a particular issue raised by appellant, a reviewing court must presume the regularity of the proceedings in the lower court. Waclawski v.Waclawski, 11th Dist. No. 2005-L-139, 2006-Ohio-3213, at ¶ 14 ("[a]bsent a complete record which would enable a comprehensive evaluation, the reviewing body is required to accept the findings of fact as determined by the original adjudicator"); Hineman v. Brown, 11th Dist. No. 2002-T-0006, 2003-Ohio-926, at ¶ 6 ("if appellant cannot demonstrate the claimed error [from the record on appeal] then we presume the regularity of the trial court proceedings and affirm the judgment").
 {¶ 17} In their first assignment of error, the appellants argue the trial court erred in granting Krystie's Motion to Quash the Precipes for Subpoena. In their second assignment of error, the appellants argue the trial court's granting of the Motion to Quash violated the trial court's standing order regarding pre-trial motions. Both assignments of error will be considered together.
 {¶ 18} Appellants maintain that, "prior to the final pre-trial conference," the trial judge presented counsel for both parties with its standard "Final Pre-Trial Requirements," which, according to appellants, provides that the "(trial) brief is to be filed no later than the date of the final pre-trial" and that "motion[s] in Limine with memo in support [sic] are to be prepared for submission to the Judge no later than the final pre-trial in order for discussions on same to ensue at final pre-trial."
 {¶ 19} Appellants further argue that, "immediately after the pre-trial conference," counsel for the appellants met with counsel for Krystie's and provided defense counsel *Page 6 
with copies of the precipes for subpoena. "Immediately prior to jury empanelment," counsel for Krystie's filed its Motion to Quash, Motion in Limine, and Trial Memorandum. Moreover, appellants claim defense counsel "falsely and materially" stated in the Motion to Quash that he realized the deficiencies in the precipes two days before filing the motion "and there was insufficient time in light of ongoing trial preparations to address the issue with Plaintiffs' counsel." Appellants maintain the purpose of providing defense counsel with copies of the precipes was to anticipate any potential problems or deficiencies and, thus, there was sufficient time to discuss the issue with appellants' counsel. Prior to trial, appellants' counsel brought the material falsity of the basis for the Motion to Quash to the trial court's attention. Thus, the trial court's granting of the motions to quash violated the court's own pre-trial order and was predicated on false information provided by defense counsel.
 {¶ 20} There are several problems with appellants' arguments. Initially, the trial court's docket does not indicate that any order was issued regarding pre-trial motions. Although appellants quote from the trial judge's standard Final Pre-Trial Requirements, this document is not part of the record and this court is unable to consider it.
 {¶ 21} Further, the trial court's docket does not indicate that it granted Krystie's Motion to Quash or Motion in Limine. "When a trial court fails to rule on a pretrial motion [and proceeds to judgment in the case], it may ordinarily be presumed that the court overruled it."State ex rel. Forsyth v. Bringner, 86 Ohio St.3d 299, 300, 1999-Ohio-105
(citation omitted); Tenan v. Huston, 165 Ohio App.3d 185, 2006-Ohio-131, at ¶ 53 (citation omitted); Commercial Invest. Assoc, Inc. v. Dean, 11th Dist. No. 2004-T-0103, 2005-Ohio-6714, at ¶ 18. *Page 7 
 {¶ 22} There is no discussion of Krystie's motions in the partial transcript of trial proceedings filed with this court.
 {¶ 23} Given the record before us, it is impossible to determine whether appellants opposed the Motion to Quash, whether Diana Whetstone appeared at trial, whether Whetstone-Sutch produced the requested documents, or whether appellants were prevented from inquiring into the matters proscribed in Krystie's Motion in Limine. In sum, in the absence of evidence the trial court granted Krystie's motions, we are unable to consider appellants' assignment of error alleging the court erred by doing so.
 {¶ 24} The first and second assignments of error are without merit.
 {¶ 25} Appellants' third and fourth assignments of error are also related and will be considered together. In them, appellants challenge the trial court's granting of a directed verdict on their intentional infliction of emotional distress claims.
 {¶ 26} A claim for intentional infliction of emotional distress lies where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, at syllabus. "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." Phung v. Waste Mgt., Inc.,71 Ohio St.3d 408, 410, 1994-Ohio-389 (citation omitted). Additionally, the mental anguish suffered by the plaintiff must be so severe and debilitating that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Paugh v. Hanks (1983), 6 Ohio St.3d 72, 78. "A non-exhaustive litany of some *Page 8 
examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." Id. (citation omitted); Kovacic v. Eastlake, 11th Dist. No. 2005-L-215,2006-Ohio-7016, at ¶ 94 (citations omitted).
 {¶ 27} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4). A motion for directed verdict presents "a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence."O'Day v. Webb (1972), 29 Ohio St.2d 215, at paragraph three of the syllabus. Accordingly, the appellate court's standard of review is de novo. Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106,2006-Ohio-954, at ¶ 90 (citation omitted).
 {¶ 28} At trial, Sandra Foster, a licensed psychologist who had examined Weir, testified on behalf of the plaintiffs. Foster found Weir to be showing symptoms of anxiety and depression as a result of harassment she had experienced at school from members of Krystie's Dance Academy. Foster described these symptoms as mood swings, a lack of interest in trying new things, trouble sleeping, and having a fear of being teased. Foster also testified Weir's functioning and judgment were all within normal limits, she had supportive family and friends, and had resumed taking dance lessons at a new studio.
 {¶ 29} Foster diagnosed Weir with "an adjustment disorder with mixed emotional features. * * * [I]t was determined that she was having difficulty in social *Page 9 
relationships due to the harassment that she was experiencing, and her current level of functioning at the time I saw her was 65 [on the global assessment functioning scale], which is mild in her functioning and severity of symptoms." Foster also described Weir's adjustment disorder as chronic because it had persisted for more than three months.
 {¶ 30} On cross-examination, Foster elaborated on the significance of a global assessment functioning score of 65: "A score between 60 and 70 is denoted as mild symptoms, which means that they have some impairment in their social and occupational functioning, but it is mild."
 {¶ 31} Plaintiffs' counsel asked Foster if she was able to tell the jury, "with a reasonable degree of medical probability whether * * * [Weir's] conditions * * * were somehow related to the dance academy and weight issue that has been described to this jury?" Foster replied, "[t]hat is the reason that [Weir] came to seek my service, so I am assuming that it was related." At this point, defense counsel objected. The trial judge called a side bar and advised plaintiffs' counsel as follows: "Two things. She's not in a position to give any testimony to the degree of medical probability, that's number 1.[3] Number 2, her assumption is not the same as indicating that there is a causal connection. That is where we are, that's as far as it goes." Plaintiffs' counsel did not resume this line of questioning.
 {¶ 32} In ruling on Krystie's motion for a directed verdict, the trial court found the plaintiffs had failed to establish three elements of a claim for intentional infliction of emotional distress: that Krystie/Whetstone-Sutch's conduct was extreme and *Page 10 
outrageous; that Krystie/Whetstone-Sutch's conduct was the proximate cause of Weir's emotional distress; and that Weir's emotional distress was severe.
 {¶ 33} In the absence of the trial transcript relative to Krystie/Whetstone-Sutch's alleged conduct, this court is unable to evaluate the trial court's conclusion that the conduct was not extreme and outrageous. On this basis alone, the trial court's judgment could be affirmed, since the failure of the non-moving party to prove "any determinative issue" entitles the moving party to judgment.
 {¶ 34} Appellants also fail to raise any argument addressing the trial court's finding that Krystie/Whetstone-Sutch's alleged conduct was not the proximate cause of Weir's emotional distress.
 {¶ 35} Appellants contend the trial court erred in finding that Weir's emotional distress was not severe. Appellants construe Foster's testimony, quoted above, to mean that, although "functioning was mild, the symptoms were severe." We disagree.
 {¶ 36} Foster's testimony, as recorded in the transcript, describes Weir's condition as "mild in her functioning and severity of symptoms"; that is, the impact of her condition on her ability to function was mild and the severity of her symptoms was mild. Contrary to appellants' interpretation, "severity" is not an adjective describing "symptoms," but, rather, is part of a prepositional phrase qualified by the adjective "mild."
 {¶ 37} Appellants also contend Foster's testimony evidences Weir's "emotional devastation." Again, we disagree. Although Foster described Weir as having anxiety and/or being depressed about her social life and harassment at school, Foster also described her as "friendly, outgoing, engaging." "She was not restless and agitated. * * * The content of her thought was within normal limits. * * * She had anxious and *Page 11 
depressed mood [sic] and her affect was within normal limits at that time. Her behavior was cooperative, her cognition, her orientation was within normal limits and she knew where she was and what day it was and why she was there. Her memory was within normal limits but she did have some incidents of not being able to concentrate. Her judgment appeared to be within normal limits. Her insight was good because she knew what had caused her distress, and her intellect is within normal limits, probably leaning toward the above average. She had no suicidal ideations, she had no homicidal ideations and she had no thoughts of any kind of abusive behavior."
 {¶ 38} The fact that Foster described Weir's mild symptoms as chronic does not render those symptoms severe. Foster further testified that Weir is happy, has improved self-confidence, and her life is returning to normal.
 {¶ 39} Construing the evidence most strongly in appellants' favor, the record before us fails to demonstrate that Weir suffered extreme emotional distress. The third and fourth assignments of error are without merit.
 {¶ 40} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting a directed verdict in favor of Krystie's Dance Academy, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] Krystie's contends the precipes were "dropped off" at the Dance Academy. Plaintiffs assert that copies of the precipes were given to defense counsel prior to their issuance. Neither contention is substantiated by the record or disputed by the parties.
[2] Krystie's asserts the plaintiffs dismissed their negligence claim "on the morning of trial." Plaintiffs do not dispute this assertion. In the absence of a complete transcript, however, the dismissal of the negligence claim is not evident from the record before us.
[3] As a psychologist, Foster was only competent to provide an opinion to a reasonable degree of psychological certainty. *Page 1