[Cite as *Molai v. Standing Rock Cemetery Bd. of Trustees*, 2022-Ohio-3004.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| FRED MOLAI, | CASE NO. 2021-P-0117 |
| Plaintiff-Appellant, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas |
| STANDING ROCK CEMETERY<br>BOARD OF TRUSTEES, | Trial Court No. 2019 CV 00874 |
| Defendant-Appellee. | |

**O P I N I O N**

Decided: August 29, 2022
Judgment: Affirmed

*Justin M. Alaburda, Daniel J. Rudary, Jack W. Hinneberg,* and *Stephen Colecchi,* Brennan, Manna & Diamond, LLC, 75 East Market Street, Akron, OH 44308 (For Plaintiff-Appellant).

*Hope L. Jones,* City of Kent Law Director, 320 South Depeyster Street, Kent, OH 44240 (For Defendant-Appellee).

JOHN J. EKLUND, J.

{¶1} Appellant, Fred Molai ("Molai"), appeals the judgment of the Portage County Court of Common Pleas in his suit against appellee, Standing Rock Cemetery Board of Trustees ("Standing Rock"), in relation to a burial plot Molai purchased for his son, Adam.

{¶2} Molai sued Standing Rock for intentional infliction of emotional distress ("IIED"), trespass, and breach of contract. Standing Rock made motions for directed verdicts on all claims. The court granted directed verdicts against Molai on the IIED and trespass claims. The jury returned a verdict in favor of Molai on the breach of contract

claim and awarded him damages of $750,000. Standing Rock filed a motion for a new trial and the court granted a new trial solely to determine damages.

{¶3} Molai raises four assignments of error: (1) that the trial court erred in granting Standing Rock's directed verdict on Molai's claim for IIED; (2) that the trial court erred in granting Standing Rock's directed verdict on Molai's claim for trespass; (3) that the trial court erred in granting Standing Rock's motion for a new trial; and (4) that the trial court erred in denying Molai's motion for judicial recusal.

{¶4} After a review of the record and applicable law, we find Molai's assignments of error to be without merit. Molai did not provide sufficient evidence that Standing Rock's actions proximately caused him serious emotional distress. Molai also did not establish a trespass claim because Standing Rock acted pursuant to a court order. The trial court did not err in granting a motion for a new trial because the award exceeded the amount of damages that the evidence established. Lastly, the trial judge did not err by declining to recuse himself from ruling on the motion for a new trial on damages. The judgment of the Portage County Court of Common Pleas is affirmed.

**Relevant Facts**

{¶5} The following facts are unfortunate, and we sympathize with Molai in grieving his late son. In 2011, Molai's son, Adam, died in a boating accident. Molai decided to bury Adam at Standing Rock, and discussed with the cemetery his desire to purchase 16 burial plots. Standing Rock showed Molai the 16 plots available and allegedly promised to reserve the plots for him. Subsequently, Molai paid a deposit for, and obtained title to, only 12 of the 16 plots.

2

**{¶6}** Molai buried Adam in one of the middle plots. He placed various ornaments and decorations as a memorial to Adam on the remaining plots surrounding his son's plot. The decorations included fencing, a flower garden, and poles approximately six feet high with posters depicting his son.

**{¶7}** In 2013, Standing Rock determined that the posters were in violation of the cemetery rules and regulations. Standing Rock requested that Molai remove the poles, posters, and flowers from the burial plot. Molai refused and Standing Rock threatened to remove the objects if he would not do so. Molai brought suit requesting injunctive relief to prevent Standing Rock from forcibly removing the objects.

**{¶8}** After several motions and years of litigation, the Portage County Court of Common Pleas entered a judgment in 2017 stating that "the poles and posters were placed on the lots without the permission of the superintendent. * * * the poles and posters do not conform with the general appearance of the cemetery. Therefore, the poles and posters violate the rules and regulations of the cemetery." The judgment entry ordered Molai to remove the poles and posters within ten days, and if he failed to do so within ten days, Standing Rock could enter the plot area and remove the poles and posters.

**{¶9}** Molai appealed the judgment and this court affirmed in 2019.

**{¶10}** Following this court affirming the judgment entry on appeal in 2019, Molai moved the poles and posters by attaching them over Adam's grave, but did not remove the objects from the property. At this time, the poles and posters had not been altered and were the same objects that the court had found did not conform with the cemetery's general appearance. Pursuant to the court order, Standing Rock removed the poles and posters. Molai retrieved the poles and posters from Standing Rock, and then had the

3

same objects bolted and welded on the headstone. Molai was notified that Standing Rock would once again remove the objects, and he came to the cemetery as the workers removed them.

{¶11} While his first case was pending, Molai attempted to place a deposit for the four remaining burial plots he initially reserved in 2011. Molai also asked to purchase footers. However, Standing Rock denied both requests because they were in a lawsuit with Molai and did not want to conduct further business with him.

**Procedural History**

{¶12} Molai filed this suit in November 2019, bringing three claims: (1) breach of contract; (2) IIED; and (3) trespass. In 2021, a jury trial was held on all three claims.

{¶13} To support his claim for IIED, Molai's grief counselor, Amanda Brace, who treated him from 2016 to 2019, testified as a lay person. Ms. Brace testified that Molai started grief counseling at her workplace in 2011 following Adam's death. When discussing Standing Rock's effect on Molai, Ms. Brace testified that Mr. Molai "continually brought up the issue with the cemetery in his counseling sessions, which is attached to the grief of his son, Adam, and being able to process the loss of his son." Ms. Brace stated that Molai was upset about the issues with Standing Rock and did not understand "how could the people at the cemetery tell me how I should grieve." Ms. Brace also testified that he was still unable to process grieving his son, that he was "crushed" by the court's order that he remove the poles and posters, and was "heartbroken" that his former girlfriend had stopped talking to him.

{¶14} After Molai rested his case, Standing Rock moved for a directed verdict on all claims. The court denied the motion on the breach of contract claim. The court granted

4

a directed verdict against Molai on the IIED claim, finding that he did not demonstrate that Standing Rock's actions caused him serious emotional distress. The court also granted a directed verdict against Molai on the trespass claim, finding that Standing Rock was allowed to enter the land and take the poles down pursuant to a court order. The only claim left to the jury was breach of contract.

{¶15} The jury was instructed on how to assess damages for a breach of contract claim. While the jury deliberated, a juror sent a handwritten note to the judge asking three questions: (1) "How do we evaluate the cost of attorney's fees?;" (2) "How do we evaluate the cost of emotional distress?;" and (3) "And can we write it as an amount plus lawyer fees?" The judge discussed his response with both attorneys and decided to simply instruct the jury to follow jury instructions no. 12 and no. 13. Standing Rock's attorney asked the judge to explain that attorney fees and emotional distress were not available because the IIED and trespass claims had been dismissed. The judge declined to explain further than directing the jury to the instructions.

{¶16} The jury returned and found for Molai and awarded him damages in the amount of $750,000. The judge spoke to the jury after their discharge to ask if they had any questions. During that conversation, one juror "blurted out" that the jury included attorney's fees in the award. The judge said he replied to the juror by stating that his jury instruction did not include attorney's fees, and that attorney's fees are not recoverable under breach of contract unless contractually agreed upon.

{¶17} Three motions were subsequently filed: (1) Standing Rock's motion for judgment notwithstanding the verdict; (2) Standing Rock's motion for a new trial; and (3) Molai's motion for judicial recusal because the judge spoke with the jury after the trial.

5

**{¶18}** At the hearing on the motions, there was a conversation between the judge and Molai's counsel concerning the discussion between the judge and the jury. The court granted the motion for a new trial and denied the remaining motions. Molai's attorney argued that the judge must recuse himself from ruling on the motion for a new trial because he received information from the jury regarding how they assessed damages. The judge declined to recuse himself and consistently stated that his discussion with the jurors about damages did not affect his ability to be fair and impartial.

**Analysis**

**{¶19}** Molai raises four assignments of error.

**{¶20}** "FIRST ASSIGNMENT OF ERROR: The trial court erred to the prejudice of Plaintiff Appellant by granting Defendant Appellee's motion for directed verdict on Plaintiff Appellant's claim for intention infliction of emotion distress (9/9/21 T.p. 197)."

**{¶21}** In his first assignment of error, Molai asserts that the trial court erred by granting Standing Rock's motion for directed verdict on the IIED claim. Molai contends that Ms. Brace's testimony shows Standing Rock caused Molai serious emotional distress.

**{¶22}** A motion for a directed verdict presents a question of law and an appellate court must conduct a de novo review of the trial court's judgment. *Bliss v. Chandler*, 11th Dist. Geauga No. 2006-G-2742, 2007-Ohio-6161, ¶ 48.

**{¶23}** "'A trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant.'" *Bliss* at ¶ 47,

6

quoting *Huffman v. Kazak Bros. Inc.*, 11th Dist. No. 2000-L-152, 2002 WL 549858, * 3 (Apr. 12, 2002.)

{¶24} "A motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Id*. at 68.

{¶25} "To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it could be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of plaintiff's psychological injury; and (4) that the mental anguish suffered by the plaintiff was serious and of a nature that no reasonable man could be expected to endure it." *Kovacic v. Eastlake*, 11th Dist. Lake No. 2005-L-205, 2006-Ohio-7016, ¶ 92. "The mental anguish suffered by the plaintiff must be so severe and debilitating that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Weir v. Krystie's Dance Acad.*, 11th Dist. Portage No. 2007-T-0050, 2007-Ohio-5910, ¶ 26, quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

7

Case No. 2021-P-0117

**{¶26}** Proximate cause is established "where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act." *Heard v. Dayton View Commons Homes*, 2018-Ohio-606, 106 N.E.3d 327, ¶ 12 (2d Dist); see also *Clinger v. Duncan*, 166 Ohio St. 216, 222, 141 N.E.2d 156 (1957).

**{¶27}** To prevail on a claim for IIED ""* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" * * *. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 671, 453 N.E.2d 666 (1983), quoting Restatement of the Law 2d, Torts, Section 46(1), at 71 (1965).

**{¶28}** In his brief, Molai asserts that Standing Rock intentionally caused him serious emotional distress when the cemetery removed the poles and posters from Adam's memorial in 2019. Yet, a claim for intentional infliction of emotional distress requires that the actor's actions were the proximate cause of plaintiff's psychological injury. *Kovacic v. Eastlake*, supra, at ¶ 92. Molai's grief counselor, Ms. Brace, only testified at trial that Molai "continually brought up the issue with the cemetery in his counseling sessions" and that it is her opinion that he is suffering emotional distress. Ms. Brace did not testify that Molai's emotional distress would not have taken place without Standing Rock taking down the poles and posters. Ms. Brace testified that Molai's emotional distress had occurred before Standing Rock's 2019 act, and that he was

8

already emotionally distressed, in her opinion, when she started treating him in 2016. She also testified that Molai's emotional distress was caused by Adam's death in 2011, when he began grief counseling, and only continued over the years when his girlfriend stopped talking to him in 2016 and when the Portage County Court of Common Pleas ordered him to take down the poles and posters in 2017.

{¶29} Thus, there is no evidence demonstrating that Standing Rock's actions proximately caused Molai serious emotional distress. In other words, notwithstanding Standing Rock removing the poles and posters from Adam's memorial, the evidence showed that Molai was already suffering emotional distress from causes that had nothing to do with Standing Rock.

{¶30} Molai also did not provide evidence establishing that Standing Rock's conduct was so outrageous and extreme as to go beyond all possible bounds of decency. Standing Rock removed the poles and posters pursuant to a court order that this court affirmed on appeal. We cannot find that acting in a manner consistent with a court order affirmed on appeal goes beyond all possible bounds of decency and is outrageous, extreme, atrocious, or utterly intolerable. Moreover, there was no evidence or testimony presented to suggest that Standing Rock's conduct was an aggravating cause to a preexisting condition.

{¶31} Here, when construed in the light most favorable to Molai, the evidence leads reasonable minds to only one conclusion, and that conclusion is adverse to Molai.

{¶32} Molai's first assignment of error is without merit.

9

Case No. 2021-P-0117

**{¶33}** "SECOND ASSIGNMENT OF ERROR: The trial court erred to the prejudice of Plaintiff Appellant by granting Defendant Appellee's motion for directed verdict on Plaintiff Appellant's claim for trespass (9/9/21 T.p. 203)."

**{¶34}** "A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 1998-Ohio-420, 697 N.E.2d 600 (1998), citing *Linley v. DeMoss*, 83 Ohio App.3d 594, 598, 615 N.E.2d 631 (1992).

**{¶35}** Molai contends that Standing Rock unlawfully entered Adam's memorial when the cemetery removed the poles and posters, and that Standing Rock did not produce any evidence supporting its claim that it was legally allowed to remove the objects.

**{¶36}** The trial court previously held in 2017, and this court affirmed on appeal, that Molai must have excavated the land to post the poles on Adam's memorial and that the memorial with poles and posters did not conform to the general appearance of the cemetery. The court then found that because of both findings, Molai violated Standing Rock's rules and regulations. The court ordered Molai to remove the poles and posters, and if he failed to do so within ten days, Standing Rock was allowed to enter the memorial and remove the objects. Molai did not remove the objects. Instead, he bolted the same objects to the headstone. Pursuant to the court order, Standing Rock removed the objects from Adam's memorial.

**{¶37}** Molai asserts that Standing Rock had no legal authority to enter the memorial because he moved the poles by bolting them to Adam's headstone. Yet, the

10

court order specifically states that the objects did not conform with the general appearance of the cemetery and needed to be removed. Molai did not remove the objects. He only moved the same unaltered objects to the headstone without removing them from the cemetery. Thus, by acting under a court order that this court affirmed on appeal, Standing Rock lawfully entered the memorial to remove the objects.

{¶38} When construed in the light most favorable to Molai, the evidence leads reasonable minds to only one conclusion, and that conclusion is adverse to Molai.

{¶39} Molai's second assignment of error is without merit.

{¶40} "THIRD ASSIGNMENT OF ERROR: The trial court erred to the prejudice of Plaintiff Appellant by granting Defendant Appellee's motion for a new trial pursuant to Civ. R. 59(A)(5)."

{¶41} Civ. R. 59(A)(5) provides that a new trial may be granted when there is an error in the amount of recovery, whether too large or too small, when the action is upon a contract.

{¶42} "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." *Simon v. Aulino*, 2020-Ohio-6962, 165 N.E.3d 706, ¶ 85 (4th Dist.).

{¶43} "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-

11

436, 28 N.E.3d 640, ¶ 46 (9th Dist.), quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 654, 635 N.E.2d 331 (1994).

**{¶44}** Thus, we review the order granting a new trial on damages for an abuse of discretion.

**{¶45}** Molai asserts that the court erred in granting a new trial to determine damages because a jury has broad discretion to assess damages.

**{¶46}** Under Ohio law, "[a] claimant seeking to recover for breach of contract must show damage as a result of the breach. Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (9th Dist.1996). The damages awarded "should place the injured party in as good a position as it would have been in but for the breach." *Id.*

**{¶47}** Here, the court gave a jury instruction that if the jury found Standing Rock broke a contract with Molai, then "Plaintiff is entitled to damages in the amount sufficient to place him in the same position he would have been if the contract had been fully performed by the Defendant to the extent of the damages that are reasonable, certain and foreseeable."

**{¶48}** To establish damages for his breach of contract claim, the only evidence Molai presented to the jury was exhibit 6, which showed receipts for four purchases of plots. The price paid for each ranged from $450 to $675.

**{¶49}** Molai is correct in asserting that the jury has broad discretion in assessing damages. *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436 at ¶ 46. Yet, a reviewing

12

court may "disturb" the jury's assessment if it finds the award is "manifestly excessive." *Id.*

{¶50} Here, the jury was instructed to award compensatory damages in an amount sufficient to place Molai in as good a position as he would have been if the contract had been fully performed. The jury instruction did not instruct or allow for damages relating to emotional distress or attorney's fees. However, the jury returned a verdict which clearly places Molai in a much better position than he would have been if the contract had been performed. Molai also did not present any evidence even suggesting he was entitled to the amount awarded. The court did not abuse its discretion in granting a new trial by finding that the award was "too large" because no evidence had been presented suggesting a damage award that would exceed the amount sufficient to place Molai in as good a position he would have been in if Standing Rock had sold him the plots.

{¶51} Molai's third assignment of error is without merit.

{¶52} "FOURTH ASSIGNMENT OF ERROR: The trial court erred to the prejudice of Plaintiff Appellant by refusing to recuse itself from ruling on Defendant Appellee's motion for a New Trial after the trial court acknowledged that it had participated in a post-verdict ex parte discussion with the jury regarding the rationale for the jury's verdict and damages award (T.d. 48)."

{¶53} In his fourth assignment of error, Molai contends that the judge erred by not recusing himself from ruling on Standing Rock's motion for a new trial after a juror revealed after the trial ended that the jury had included attorney's fees in the award of damages.

Case No. 2021-P-0117

**{¶54}** Ohio Constitution, Article IV, Section 5(C) provides: "The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof." This provision "vests exclusive authority to pass on disqualification matters in the chief justice or her designee." *Beer v. Griffith*, 54 Ohio St.2d 440, 441–442, 377 N.E.2d 775 (1978).

**{¶55}** In *Beer*, the court of appeals voided a judgment of the trial court, holding that the trial judge erred and should have recused himself. However, the Ohio Supreme Court reversed, holding: "Since only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals was without authority to pass upon disqualification or to void the judgment of the trial court upon that basis." (Footnote omitted.) *Id.* at 441.

**{¶56}** Thus, a court of appeals lacks jurisdiction to review a trial judge's refusal or failure to recuse. *State ex rel. Hough v. Saffold*, 131 Ohio St.3d 54, 2012–Ohio–28 960 N.E.2d 451, ¶ 2 (2012).

**{¶57}** Therefore, we do not have authority to review Molai's assertion that he was prejudiced by the trial judge ruling on the motion for a new trial.

**{¶58}** We have considered whether Evid. R. 606(B) bears on this issue; it provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly

14

brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

{¶59} Evid. R. 606(B) does not apply here. The judge's discussion with the juror only resulted in him learning information that a juror "blurted out." There had not been at that time any inquiry into the validity of the verdict. No juror testified nor was there an affidavit or evidentiary material of a juror's statement offered into evidence.

{¶60} Molai's fourth assignment of error is without merit.

{¶61} Molai's assignments of error are without merit and we affirm the judgment of the Portage County Court of Common Pleas.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

15

Case No. 2021-P-0117