LAMBDA RESEARCH et al., Appellees,

v.

JACOBS et al.; General Electric Company et al., Appellants.

[Cite as *Lambda Research v. Jacobs,* 170 Ohio App.3d 750, 2007-Ohio-309.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–050464 and C–050502.

Decided Jan. 26, 2007.

Taft Stettinius & Hollister, L.L.P., W. Stuart Dornette, and Julia B. Meister, for appellees.

Vorys, Sater, Seymour & Pease, L.L.P., W. Breck Weigel, and Philip J. Smith, for appellants.

Per Curiam.

{¶ 1} Appellants, General Electric Company, GE Aircraft Engines, GE Transportation, and six of their current and former employees, Peter J. Linko, David Crall, Paul Moncelle, Alberto Luna, Leo Buchakjian, and Meyer Benzakeim,

appeal from the orders of the trial court denying their motion to quash subpoenas issued by plaintiffs-appellees Lambda Research and Surface Enhancement Technologies, L.L.C. (collectively "Lambda") and granting Lambda's subsequent motion to compel discovery. They raise two assignments of error for our review. Finding merit in both their assignments of error, we reverse the trial court's orders granting Lambda's motion to compel and denying GE's motion to quash and remand this cause for further proceedings consistent with this decision and the law.

## Underlying Lawsuit

{¶ 2} In October 2003, Lambda filed suit against its former employee Terry Jacobs and his new employers, Ecoroll Corp. Tool Technology and Ecoroll AG ("Ecoroll"), for breaches of employment and confidentiality agreements between Jacobs and Lambda, misappropriation of trade secrets and confidential information, tortious interference with the employment and confidentiality agreements between Jacobs and Lambda, and tortious interference with Lambda's existing business relationships.

{¶ 3} Lambda is a Cincinnati company that develops, among other applications, low-plasticity burnishing technology, which reduces the stress on and improves the life of turbine engine blades. Lambda alleged that Jacobs, while still a Lambda employee, had made arrangements to leave Lambda and work for Ecoroll, a direct competitor, and that Jacobs had illegally contacted Lambda's former customers, disclosed confidential information relating to Lambda's burnishing technology, and interfered with Lambda's business relationships. GE was one of the customers that Jacobs had allegedly contacted.

{¶ 4} GE and Lambda had a business relationship between 1999 and 2002, but GE discontinued the relationship in 2002. Thomas Broderick, a former program manager at GE, was deposed by Lambda in November 2004. He testified that GE's relationship with Lambda had not been terminated because of Jacob's or Ecoroll's interference, but had ended primarily due to GE and Lambda's inability to reach economic terms. He related that, since that time, GE had continued its own research and had further developed its own burnishing technology. Broderick testified that GE had purchased and used burnishing tools from Ecoroll, Jacob's new employer, but explained that GE had not obtained any process information or other confidential or trade-secret information from Jacobs or Ecoroll.

## Lambda's Subpoenas to GE

{¶ 5} Following Broderick's deposition, Lambda issued seven broad subpoenas for the production of documents and for depositions to GE and six of GE's

current or former employees. The subpoenas demanded that GE produce enormous quantities of documents, including computer records, electronic media, e-mail, lab books or entries, logs, and "design record books." The subpoenas further demanded various other records relating to "low pressure burnishing," including test results and engineering drawings. GE employees were also instructed to turn over all "failure analyses reports, material testing reports, and photomicrographs of aircraft jet engine hardware," as well as "engineering analyses * * * on the testing of various aircraft engine hardware."

{¶ 6} Similarly, the subpoena to GE's corporate entities demanded broad categories of "all documents and information," such as those "relating to or mentioning low plasticity burnishing" or "burnishing aircraft engine parts by a process that minimizes and/or limits cold work and/or cold working." The subpoenas required production of "all documents and information relating to or mentioning projects involving the use of any tool obtained from or manufactured by Ecoroll."

### GE's Motion to Quash and for a Protective Order

{¶ 7} Shortly after receiving the subpoenas, GE notified Lambda of its objections to the subpoenas. When Lambda refused to narrow the scope of the subpoenas, GE filed a motion to quash the subpoenas and for a protective order prohibiting the discovery of confidential or proprietary information. In the motion, GE explained that it had conducted extensive research into burnishing activities for many years before it had ever entered into a business relationship with Lambda. GE argued that after it had ended its relationship with Lambda, it had continued this research and development, further refining its own burnishing technology while deliberately avoiding Lambda's patents.

{¶ 8} GE argued that Lambda's subpoenas were overbroad because they sought complete disclosure of all GE's past and current activities in regard to its highly confidential burnishing programs, that they were oppressive, and that they were unduly burdensome. GE also argued that the requested information and documents were either irrelevant or immaterial to the underlying lawsuit or were not reasonably calculated to lead to the discovery of admissible evidence. GE further stated that it had offered to produce all known communications between GE and Jacobs and Ecoroll as well as the documents Jacobs and Ecoroll had provided to GE and that such materials were sufficient for Lambda to determine the relationship between itself and Jacobs and Ecoroll.

{¶ 9} Lambda filed a reply to the motion to quash, in which it argued that the subpoenaed material was necessary to prove its claim that Jacobs and Ecoroll had impeded its business relationships with GE and might have shared its confidential information with GE. Lambda argued that it had expected to perform

services for GE in the burnishing area but that GE now viewed itself as a competitor rather than as a customer. Lambda argued that the discovery process had revealed communications between Jacobs and Ecoroll and GE regarding the underlying lawsuit as well as Lambda's burnishing technology and that it was entitled to inquire into these matters.

{¶ 10} On May 3, 2005, the trial court held a hearing on GE's motion. At the conclusion of the hearing, the trial court stated that it was denying the motion to quash because "with discovery issues, I let people get what they want to get, and as far as your big secrets, you're all intertwined." The trial court's entry denying GE's motion to quash was journalized May 10, 2005. The entry itself set forth no reasons or analysis to support the trial court's decision. Consistent with the trial court's suggestion at the hearing that document-protection issues remained open, the entry was silent with respect to GE's motion for a protective order.

### Lambda's Renewed Subpoenas and Motion to Compel

{¶ 11} In the meantime, Lambda had reissued the same seven subpoenas to GE on May 9, 2005, as well as an additional subpoena to GE on May 23. Despite earlier assurances to GE's counsel, Lambda's counsel reneged on a commitment to work with GE on the production of documents and refused to agree to a protective order. Lambda then moved to compel GE to respond, securing an expedited hearing from the trial court on June 9. At the hearing, the trial court was informed of GE's impending appeal, but it proceeded to entertain Lambda's motion. Despite GE's arguments concerning its trade secrets and entitlement to a protective order, the trial court informed GE's attorneys that it would grant Lambda's motion to compel. It also clarified, after some confusion, that it had intended the May 10 entry to deny a protective order as well as to deny the motion to quash. The trial court additionally threatened to hold GE's counsel in contempt following this appeal for failing to provide the subpoenaed materials. At the conclusion of the hearing, Lambda demanded that GE be enjoined from all contact with Jacobs and Ecoroll and that it immediately turn over all the materials to a bonded warehouse.

{¶ 12} Following the hearing, GE's counsel produced for Lambda all of the documents detailing its communications and correspondence with Jacobs and Ecoroll, but with its trade secrets redacted. The day after the hearing, Lambda presented an entry, which GE's counsel had not endorsed, to another judge of the trial court for signature. On June 13, GE timely objected to the proposed entry Lambda had submitted without GE's signature, but the trial court had already signed the entry granting Lambda's motion to compel. The entry had further granted Lambda the injunctive relief it had orally requested at the hearing. GE filed a notice of appeal from the trial court's second entry on June 23. We have consolidated GE's appeals for purposes of argument and decision.

## Final, Appealable Order

**{¶ 13}** Before we address the merits of GE's assignments of error, we address our jurisdiction to entertain these appeals. Following oral argument, Lambda filed a notice of supplemental authority urging this court to hold that the trial court's orders were not final and appealable based upon the Tenth Appellate District's decision in *Dispatch Printing Co. v. Recovery L.P.*[1]

{¶ 14} In *Dispatch Printing*, the Tenth Appellate District held that a trial court's discovery order was not final and appealable because it did not "provide for unfettered discovery coupled with the danger of being unable to 'unring the proverbial bell.'"[2] The court concluded that the entry merely "provid[ed] guidance to the parties as to how discovery w[ould] proceed."[3] Central to the court's analysis was the fact that safeguards were in place to address the parties' concerns regarding proprietary information or trade secrets.[4] Thus, the Tenth Appellate District felt confident that the trial court would undertake the necessary steps to protect the dissemination of proprietary materials and trade secrets in that case, including "additional hearings, in-camera inspections, and the like."[5]

{¶ 15} This case, however, is distinguishable from *Dispatch Printing* in that the trial court here rejected any safeguards that would have protected GE's trade secrets and proprietary information. Following the trial court's May 10, 2005 order denying GE's motion to quash, Lambda's counsel reneged on Lambda's commitment to work with GE on the production of documents and refused to agree to a protective order. At the June 9 hearing, the trial court clarified on the record that it had intended to overrule GE's motion for a protective order. It then threatened to hold GE's trial counsel in contempt for failing to produce GE's documents for Lambda.[6] Moreover, in its June 13 entry, the trial court ordered that GE turn over all the subpoenaed materials at once to a warehouse, in spite of GE's appeals challenging the scope of that production. While the trial court

---

1. *Dispatch Printing Co. v. Recovery L.P.*, 166 Ohio App.3d 118, 2006-Ohio-1347, 849 N.E.2d 297.

2. Id. at ¶ 9.

3. Id. at ¶ 10.

4. Id. at ¶ 12–13.

5. Id. at ¶ 13.

6. See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 95, 551 N.E.2d 172, paragraph two of the syllabus (holding that when it is in the interests of justice to ascertain the grounds upon which the judgment of the lower court is founded, a reviewing court must examine the entire proceedings, including the transcript with the trial judge's comments).

suggested the entry of a "stipulated protective order" as a condition of access to the documents at the May hearing, it nonetheless ordered that Lambda be permitted to immediately review all of GE's materials without limitation.

{¶ 16} Thus, unlike *Dispatch Printing,* in this case the trial court's interpretations of its own orders and its subsequent conduct demonstrate that it considered itself to have moved beyond providing advice and guidance concerning any discovery. Consequently, we find the court's analysis in *Dispatch Printing* to be inapplicable in this case. A delay in appellate consideration of these entries until an appeal from the ultimate entry of final judgment in this action would operate to deny GE "a meaningful or effective remedy." [7] As a result, we conclude that the entries from which GE has appealed are "final orders" under R.C. 2505.02(B)(4). We therefore address the merits of GE's appeals.

### The Trial Court Abused Its Discretion in Denying the Motion to Quash

■ {¶ 17} In its first assignment of error, GE contends that the trial court abused its discretion in denying its motion to quash and for a protective order. GE argues that the trial court failed to consider whether Lambda had a substantial need for the discovery and failed to provide any safeguards to protect GE's trade secrets and confidential information. We agree.

{¶ 18} Civ.R. 45 provides that when a nonparty moves to quash a subpoena on the ground that it imposes an undue burden, the party seeking the discovery must demonstrate a substantial need for the materials that cannot be met through alternate means.[8] The rule further provides that the court "shall" quash the subpoena "unless the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship." [9]

{¶ 19} Here, the trial court's entry denying GE's motion to quash contained no explanation for its decision. Likewise, our review of the transcript reveals no sound reasoning process for the trial court's ruling. The trial court's only explanation for denying the motion to quash was its articulation of an exceptionally broad view of the scope of discovery: "With discovery issues, I let people get what they want." The trial court's laissez-faire approach to discovery was at direct odds with the both Civ.R. 45(C) and Civ.R. 26(C), which provide protection

---

7. *Gibson–Myers & Assoc., Inc. v. Pearce* (Oct. 27, 1999), 9th Dist. No. 19358, 1999 WL 980562 (holding that an order compelling the production of documents that constitute trade secrets is a "final order" under R.C. 2505.02(B)(4), because the "proverbial bell" rung by compelled disclosure of the undiscoverable material "cannot be unrung" on appeal from a final judgment in the action).

8. Civ.R. 45(C)(5).

9. *Martin v. Budd Co.* (1998), 128 Ohio App.3d 115, 120, 713 N.E.2d 1128.

for nonparties and trade secrets. Consequently, we conclude that the trial court's decision was arbitrary and demonstrated no evidence of a sound reasoning process. We therefore sustain GE's first assignment of error.

### The Trial Court Lacked Jurisdiction to Rule on the Motion to Compel

{¶ 20} In its second assignment of error, GE contends that the trial court had no jurisdiction to grant Lambda's motion to compel discovery, because it interfered with this court's jurisdiction over discovery issues that had already been raised on appeal. We agree.

{¶ 21} It is well settled that the common pleas court and the court of appeals cannot assert jurisdiction simultaneously over matters on appeal.[10] When a notice of appeal is filed, it confers jurisdiction on the court of appeals and divests the common pleas court of its control over the aspects of the case involved in the appeal.[11] Consequently, the trial court retains jurisdiction over only those issues not directly related to the subject of the appeal.[12] Thus, the trial court is prohibited from taking any action that is inconsistent with the appellate court's ability to review, affirm, modify, or reverse the judgment being appealed.[13]

{¶ 22} GE's first appeal placed all matters concerning Lambda's entitlement to enforce the subpoenas before this court. The scope of GE's first appeal is confirmed by the trial court's subsequent pronouncement that it intended its first order to deny GE's motion for a protective order. Consequently, the trial court had no authority to compel enforcement of the subpoenas, particularly in light of the fact that it had decided the motion on an expedited basis, before GE could ever file timely objections. Because GE's first appeal divested the trial court of jurisdiction, its June 13 entry is a legal nullity.[14] As a result, we sustain GE's second assignment of error.

### Conclusion

{¶ 23} Consequently, we reverse the trial court's orders granting Lambda's motion to compel and denying GE's motion to quash. This case is hereby

---

**10.** *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 116, 17 OBR 173, 477 N.E.2d 662.

**11.** Id.

**12.** Id.

**13.** *State ex rel. Special Prosecutors v. Judges, Belmont Cty. Court of Common Pleas* (1978), 55 Ohio St.2d 94, 97, 9 O.O.3d 88, 378 N.E.2d 162; *In re Kurtzhalz* (1943), 141 Ohio St. 432, 25 O.O. 574, 48 N.E.2d 657, paragraph two of the syllabus.

**14.** *Air Prod. & Chemicals, Inc. v. Indiana Ins. Co.* (Dec. 23, 1999), 1st Dist. Nos. C–980947 and C–990009, 2000 WL 955600 ("a ruling by the trial court that purports to modify a pretrial

remanded with instructions for the trial court to conduct an in camera inspection of the requested materials to determine under the appropriate legal standards, which records, if any, are pertinent to the pending lawsuit.[15] In so doing, the trial court should require that the materials be transmitted to the court under seal. Furthermore, the disclosure of any relevant trade secret or proprietary information must be limited by a protective order between GE and Lambda. Finally, we caution the trial court that any attempt to proceed with contempt proceedings against GE for the successful prosecution of this appeal will be a "due process violation of the most basic sort." [16]

Judgment reversed
and cause remanded.

SUNDERMANN and HENDON, JJ.

Judge RUPERT A. DOAN was a member of the panel, but died before the release of this decision.

---

ruling that is a basis of the appeal is inconsistent with the power of this court to reverse, modify, or affirm the judgment below").

**15.** *Majestic Steel Serv., Inc. v. DiSabato* (Dec. 16, 1999), 8th Dist. No. 76521, 1999 WL 1206573.

**16.** See *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604; *North Carolina v. Pearce* (1969), 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656; see, also, *State v. Ramey* (Nov. 23, 1979), 10th Dist. No. 79AP–96, 1979 WL 209454.