DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court and the following disposition is made:
 {¶ 1} Defendants-Appellants, the Recreation Specialists Insurance family of entities, Andrew West, Eric Raudins, and William Hobbs (collectively, "RIS") appeal an order of the Summit County Court of Common Pleas that denied their motion for a protective order prohibiting the discovery of trade secrets; allowed discovery subject to a less restrictive protective order; and permitted Appellees to obtain a forensic examination of RIS's computers. Because this matter is not final within the meaning of R.C. 2505.02(B)(4), this Court dismisses the appeal. *Page 2 
 FACTS {¶ 2} National Interstate Corporation is an insurance company that provides, among other things, specialized insurance policies for recreational vehicles. Mr. Hobbs, Mr. West, and Mr. Raudins are all former employees of NIC who had been employed subject to noncompetition agreements. Mr. Hobbs created the RIS entities, which later employed both Mr. West and Mr. Raudins. On March 1, 2007, National Interstate Corporation and National Interstate Insurance Company (collectively, "NIC") filed this action against RIS alleging claims of breach of contract and misappropriation of trade secrets. NIC also alleged claims of breach of a duty of loyalty against Mr. West and tortious interference with business relationships against the RIS entities, Mr. Raudins, and Mr. Hobbs. The crux of NIC's complaint is the allegation that the RIS entities, Mr. Hobbs, and Mr. Raudins used trade secrets of NIC to further their plan to form a competing business and used Mr. West — the last of the three to leave NIC's employ — to obtain trade secrets at NIC's expense.
 {¶ 3} The trial court expedited discovery and, on March 5, 2007, NIC served discovery requests upon RIS. Of particular relevance to this appeal is NIC's request, propounded upon defendants West, Raudins, and Hobbs, for "all computer, cellular phone, personal data assistants and any other device or other device from which you are able to send emails, text messages or other electronic communications." NIC also requested documents related to West, Hobbs, *Page 3 
Raudins, and RIS's "business plans, operations and strategies." On March 12, 2007, RIS moved for a protective order, specifically objecting to NIC's Requests for Production of Documents by Mr. West, numbered one, four, five, eight, and nine; by the RIS entities, numbered five, six, and nine; and by Mr. Raudins and Mr. Hobbs, numbered one, four, five, and eight through ten. RIS objected to each of these requests on the basis that they requested the disclosure of trade secrets and raised various objections based on overbreadth and relevancy of the information sought by NIC. In response to NIC's request to examine their devices capable of sending electronic communications, RIS objected:
 "If the Court were to enforce this request, Defendants] would basically have to request everything [they] have which is capable of storing electronic communications and allow Plaintiff to figure out what was relevant, privileged, or otherwise protected, all the while looking through everything which is not."
 {¶ 4} NIC responded in opposition to the motion for protective order on March 14, 2007. In response to RIS's objection to the request for devices capable of sending electronic communications, NIC argued:
 "Defendants, by asserting that `not everything' on the requested devices is relevant, admit that the devices contain relevant information. Despite that fact, Defendants are entirely refusing to respond to this Request. In doing so, Defendants are flaunting their obligations under the Ohio Rules. Moreover, it is not for Defendants to pick and choose what information is relevant and what is not. * * * [T]he existence of some irrelevant information dos not mean that Defendants can make a blanket refusal to produce the requested information.
 "It is anticipated that information that incriminates Defendants is contained on the devices requested, and the only way to get that *Page 4 
information very likely is through a forensic examination of the devices. After all, it is likely that Defendants have deleted any communications or other information. Additionally, Plaintiffs have very good reason to believe that the individual Defendants * * * used personal email accounts to communicate and transfer Plaintiff's trade secret information. The personal email account information and evidence of those communications would necessarily be contained on the Defendant's computers and personal communication devices." (Emphasis added.)
NIC also stated that it would agree to a protective order that required the production of the requested items, but subject to RIS's ability to designate certain information as "for attorney's eyes only."
 {¶ 5} On July 5, 2007, the trial court ordered the parties to "simultaneously file their briefs on the issue of Defendants' business plans, financial documents, operational agreements, and related matters by July 9, 2007." It appears from the record that, prior to filing their briefs, the parties engaged in negotiations regarding an agreed protective order. The negotiations, however, broke down short of an agreement. The parties filed simultaneous briefs on that date related to the previously-filed motion for a protective order. The trial court did not conduct a hearing, nor did RIS provide any documents to the trial court for an in camera inspection. Instead, the responses related to NIC's discovery requests in general and in their entirety, not to specific documents identified by either party. RIS argued that its trade secrets could only be protected by an order that blocked all of NIC's discovery requests which covered trade secrets; NIC maintained that RIS's trade secrets — if any — could be adequately protected by a *Page 5 
protective order restricting access to documents designated in the course of production. NIC also reiterated its position that a forensic examination of RIS's computers was necessary to obtain the discovery documents and to protect them from destruction.[1]
 {¶ 6} The trial court denied RIS's motion for a protective order prohibiting the discovery, but concluded that NIC's proposed protective order was appropriate under the circumstances. The trial court also found that a forensic examination of RIS's computers was warranted and ordered NIC to provide a protocol for the examination. On August 27, 2007, the trial court adopted NIC's proposed protective order and imaging protocol. RIS has appealed from those orders, asserting that they are within this Court's jurisdiction pursuant to R.C.2505.02(B)(4).
 JURISDICTION {¶ 7} Section 3(B)(2), Article IV of the Ohio Constitution grants courts of appeals the jurisdiction "to review and affirm, modify, or reverse judgments or final orders[.]" R.C. 2505.02(B) includes within the scope of our jurisdiction certain interlocutory orders. Among these are orders that grant or deny a *Page 6 
provisional remedy, or "a proceeding ancillary to an action, including, but not limited to, * * * discovery of privileged matter[.]" R.C.2505.02(A)(3). R.C. 2505.02 (B)(4) provides:
 An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it * * * grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
 {¶ 8} A determination that an order relates to a provisional remedy, however, is only the first step in determining this Court's jurisdiction under R.C. 2505.02(B)(4). See Sinnott v. Aqua-Chem, Inc.,116 Ohio St.3d 158, 2007-Ohio-5584, at ¶ 16; State v. Muncie (2001), 91 Ohio St.3d 440,450. "R.C. 2505.02(B)(4) establishes a three-part test for determining whether an order is final and appealable. As an initial matter, the order must grant or deny a provisional remedy; if so, the order must also determine the action and prevent a judgment in favor of the appealing party regarding the provisional remedy, and the appealing party cannot have a meaningful or effective appellate remedy following final judgment. Not all provisional remedy orders are necessarilyappealable; the conditions of RC. 2505.02(B)(4)(a) and (b) must besatisfied before the order can be considered final and appealable."
(Emphasis added.) Sinnott, at ¶ 16, citing *Page 7 Muncie, 91 Ohio St.3d at 446, 450. See, also, Briggs v. Mt. CarmelHealth Sys., 10th Dist. No. 07AP-251, 2007-Ohio-5558, at ¶ 12;
 {¶ 9} This Court has determined that an order which compels the discovery of trade secrets may be final and appealable as a provisional remedy. Gibson-Myers Assoc. v. Pearce (Oct. 27, 1999), 9th Dist. No. 19358, at *2. In that case, we concluded:
 "On its face, R.C.2505.02(A)(3) is flexible and able to address situations where a party has a protectable interest at stake and yet has no meaningful ability to appeal the decision which discloses that interest to others. If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage. In a competitive commercial market where customers are a business' most valuable asset and technology changes daily, disclosure of a trade secret will surely cause irreparable harm." Id.
Other cases, however, illustrate the need for flexibility in application of R.C. 2505.02(A)(3) with respect to the facts of each case and the stage of discovery at which the parties find themselves. Along this spectrum are orders which relate to the discovery of trade secrets — and, therefore, to a provisional remedy — but which do not meet the requirements of R.C. 2505.02(B)(4)(a) and (b) with respect to the discovery.
 {¶ 10} In Dispatch Printing Co. v. Recovery Ltd. Partnership, 10th Dist. Nos. 05AP-640, 05AP-691, 05AP-731, 2006-Ohio-1347, the Tenth District Court of Appeals considered an order that granted a motion to compel, denied a motion for a protective order, and allowed discovery with respect to trade secrets. In that *Page 8 
case, however, "the trial court envisioned more than just completely unrestricted discovery. * * * In effect, the trial court did not simply order the production of proprietary or trade-secret information, but, rather, it ordered that discovery should continue with safeguards in place in order to address the concerns regarding proprietary information or trade secrets[.]" Id. at ¶ 12. The court held that the trial court's order related to regulation of discovery in general rather than to the disclosure of particular trade secrets. Id. Addressing the concerns considered by this Court in Gibson-Myers, the Tenth District explained:
 "It is important to bear in mind the underlying rationale for finding an order compelling discovery to be a final, appealable order, which is to prevent the dissemination of protected materials and to avoid the quagmire of being unable to unring the proverbial bell. Neither scenario is present here, because the trial court's discovery order fully contemplates the imposition of adequate safeguards during the discovery process. While the exact type of safeguards to be imposed and the mechanics of how they will be implemented are not clear, the trial court did indicate the use of protective orders and confidentiality agreements, and we are confident that if additional hearings, in-camera inspections, and the like are warranted, then the trial court will undertake what is necessary to protect the dissemination of proprietary material and trade-secret information." Id. at ¶ 13.
See, also, Lambda Research v. Jacobs, 170 Ohio App.3d 750,2007-Ohio-309, at ¶ 14-15 (distinguishing Dispatch Printing because, in that case, "[c]entral to the court's analysis was the fact that safeguards were in place to address the parties' concerns regarding proprietary information or trade secrets.") Although not explicitly stated, therefore, it appears that the Tenth District determined that the order, while related to a provisional remedy, did not satisfy R.C.2505.02(B)(4)(a). *Page 9 
 {¶ 11} The order from which RIS has appealed falls within the definition of a provisional remedy provided by R.C. 2505.02(A)(3), but neither "determines the action with respect to the provisional remedy" nor "prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy" as required by R.C.2505.02(B)(4)(a). Because RIS's motion for a protective order sought to prohibit discovery entirely with respect to NIC's requests for production of documents, the trial court has not been presented with the opportunity to determine whether any particular documents constitute trade secrets. Although the parties seem to agree at this point that the discovery sought by NIC may contain trade secrets, the record indicates that considerable dispute remains about the extent to which that is the case. The trial court's orders have allowed discovery of a class of documents subject to protection without making a determination with respect to any. The protective orders currently in place preserve RIS's ability to designate materials as trade secrets while maintaining the parties' rights to object, whether those materials are produced in hardcopy form or in an electronic medium.
 {¶ 12} In this case the trial court has allowed discovery to proceed subject to general protections while maintaining the parties' ability to object in the case of specific documents. The order does not determine the action with respect to the provisional remedy, and the requirements of R.C. 2505.02(B)(4) are not met at this time. Because the order from which RIS has appealed is not a final appealable *Page 10 
order within the meaning of R.C. 2505.02, this Court does not have jurisdiction to consider this appeal.
Appeal dismissed.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
CARR, P. J. WHITMORE, J. CONCUR
[1] RIS did not address the forensic examination of its computers in its supplemental brief, despite the fact that NIC raised the issue at least three months before in response to the motion for a protective order. On the facts of this case, this Court makes no determination with respect to whether an order compelling a forensic computer analysis, standing alone, meets the requirements of R.C. 2505.02(B)(4). *Page 1