[Cite as *Young v. Durrani*, 2016-Ohio-5526.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JUDY YOUNG, | : | APPEAL NOS. C-150562 |
| | | C-150566 |
| and | : | TRIAL NO. A-1406361 |
| CECIL YOUNG, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| UC HEALTH, | : | |
| WEST CHESTER HOSPITAL, LLC, | : | |
| and | : | |
| THE CHRIST HOSPITAL, | : | |
| Defendants-Appellants, | : | |
| and | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed in Part and Cause Remanded; Appeals Dismissed in Part

Date of Judgment Entry on Appeal: August 26, 2016

*The Deters Law Firm*, *Matthew J. Hammer*, *Joseph T. Deters* and *Robert A. Winter, Jr.*, for Plaintiffs-Appellees,

*Dinsmore & Shohl LLP*, *Jennifer Orr Mitchell* and *Matthew S. Arend*, for Defendant-Appellant The Christ Hospital,

*Frost Brown Todd LLC*, *Douglas R. Dennis* and *Ryan W. Goellner,* for Defendants-Appellants UC Health and West Chester Hospital,

*Dinsmore & Shohl LLP*, *J. David Brittingham* and *Thomas P. Kemp, Jr.*, for Amicus Curiae Cincinnati Children's Hospital Medical Center.

**DEWINE, Judge.**

{¶1} This is another appeal in a series of cases involving alleged malpractice by a spine surgeon. The surgeon has fled the country, leaving his patients to pursue the hospitals where the surgeries took place. In this case, one hospital argued that the claims filed against it by a patient were untimely under the statute of repose, which bars medical claims filed more than four years after the alleged malpractice. The trial court held that the statute of repose was unconstitutional and denied the hospital's motion to dismiss the claims. We reverse the court's judgment in part. The Ohio Supreme Court resolved the question a couple of years ago: the medical statute of repose is constitutional. And because the claims against the hospital are medical claims, they are barred by the statute of repose.

## I. Background

{¶2} Judy Young consulted with Dr. Abubakar Atiq Durrani in early 2008, seeking relief from lower back and neck pain. On November 6, 2008, Dr. Durrani performed surgery on Ms. Young's neck at The Christ Hospital. Despite the surgery, Ms. Young continued to suffer from neck pain. Dr. Durrani conducted a second surgery—this time on her lower back—at West Chester Hospital. When Young's pain persisted, she asked Dr. Durrani to remove the hardware inserted during the surgeries, but he allegedly refused.

{¶3} Eventually, Ms. Young decided to sue Dr. Durrani, claiming that the surgeries had been medically unnecessary and improperly performed. According to Young, while she was preparing to file her lawsuit in 2014, she became aware that Dr. Durrani had used a bone morphogenetic protein product—Infuse/BMP-2—without her consent during her surgeries. She claims that Dr. Durrani used the product "off-label"—

that is, in a way not approved by the Food and Drug Administration. Ms. Young alleges that off-label use of Infuse/BMP-2 can cause uncontrolled bone growth around the spinal cord, which can lead to pain, spasms and paralysis.

## II. The Lawsuit

{¶4} Ms. Young and her husband sued the surgeon, Center for Advanced Spine Technologies, Inc., West Chester Hospital/UC Health and The Christ Hospital.[1] The claims asserted against The Christ Hospital—which are the subjects of this appeal—included negligence; negligent credentialing, supervision and retention; fraud; loss of consortium; violations of the Ohio Consumer Sales Practices Act ("OCSPA"); and product-liability claims. Additionally, she sought declaratory judgments that R.C. 2305.113(C), the medical statute of repose, and R.C. 2305.25,[2] the medical peer-review statute, were unconstitutional.

{¶5} The Christ Hospital filed a motion to dismiss the claims against it. The hospital argued (1) that the claims for negligence, negligent credentialing, supervision and retention, fraud, loss of consortium, OCSPA violations and product liability were medical claims subject to a one-year statute of limitations and a four-year statute of repose; (2) that, as a matter of law, the complaint did not state a claim for violations of the OCSPA and product liability; (3) that the declaratory-judgment action as to the peer-review statute was not properly pled; and (4) that the spoliation claim necessarily failed because the other claims were subject to dismissal.

---

[1] Facing trial in another malpractice case, Dr. Durrani fled the country in January 2013.

[2] The Youngs' complaint cited R.C. 2305.25 as the statute they sought to invalidate, but that is the definitional section of the chapter. Based on their allegations, it appears their true target was either R.C. 2305.251, which provides immunity to peer-review committees, or R.C. 2305.252, which provides for the confidentiality of peer-review-committee proceedings.

{¶6} The trial court denied The Christ Hospital's motion to dismiss in a wide-ranging decision that set forth multiple bases for denial. It started by determining that the complaint stated a claim for each cause of action alleged. The court also decided that the claims against The Christ Hospital were not medical claims subject to a one-year statute of limitations but rather nonmedical claims filed timely within the applicable statutes of limitations. Despite concluding that the claims against The Christ Hospital were not medical claims (and thus not subject to the medical statute of limitations or the medical statute of repose), the court reviewed the statute of repose and held that it was unconstitutional. Further, the court determined that R.C. 2305.251, the statute providing immunity for peer-review-committee decisions, was unconstitutional. Both The Christ Hospital and West Chester Hospital/UC Health appealed.

### III. Our Appellate Jurisdiction

{¶7} As an initial matter, we consider our jurisdiction over this appeal. Our appellate jurisdiction is limited to review of trial courts' final orders. Ohio Constitution, Article IV, Section 3(B)(2). Ordinarily, a trial court's denial of a motion to dismiss is not a final order. *See Polikoff v. Adam*, 67 Ohio St.3d 100, 103, 616 N.E.2d 213 (1993); *State Auto. Mut. Ins. Co. v Titanium Metals Corp.*, 108 Ohio St.3d 540, 2006-Ohio-1713, 844 N.E.2d 1199. But the legislature has provided that "[a]n order determining the constitutionality of * * * the enactment of section[] 2305.113" is a final order subject to appellate review. *See* R.C. 2505.02(B)(6).

{¶8} While R.C. 2505.02(B)(6) settles our jurisdiction to review the trial court's decision about the constitutionality of R.C. 2305.113(C), less clear is whether we have jurisdiction over the remaining issues decided by the court in its order. It is tempting to conclude simply that because the court's order included a decision about the constitutionality of R.C. 2305.113(C), our jurisdiction extends to the entire order and the

5

determinations encompassed within it. But decisions involving analogous statutes contradict this approach.

{¶9} Cases determining whether political subdivisions are entitled to immunity are instructive. R.C. Chapter 2744 establishes immunity and defenses for political subdivisions and their employees. Under R.C. 2744.02(C), a trial court's decision denying immunity to a political subdivision or its employees is a final order. Appellate courts reviewing decisions denying immunity have concluded that their jurisdiction is limited to the immunity question only. Thus, in *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 19, the Ohio Supreme Court held that "an order denying a motion for judgment on the pleadings that is predicated on a statute-of-limitations defense does not deny the benefit of immunity and is not a final, appealable order even though it arose along with a political subdivision's immunity claim." *See Nagel v. Horner*, 4th Dist. Scioto No. 04CA2975, 2005-Ohio-3574 (concluding the court lacked jurisdiction to consider two assignments of error that did not concern immunity). *See also Giusti v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 24023, 2008-Ohio-4333 (appellate jurisdiction pursuant to R.C. 2305.252 over order compelling disclosure of peer-review matter did not extend to order denying motion to compel answers to interrogatories). Nonetheless, recognition of the limits of appellate jurisdiction under R.C. 2744.02(C) does not prevent courts from deciding other issues that are intertwined with the immunity issue. For example, in *Kurz v. Great Parks of Hamilton Cty.*, 1st Dist. Hamilton No. C-150520, 2016-Ohio-2909, we had to consider whether there was sufficient evidence of a parks employee's negligence in order to determine whether the parks district was entitled to immunity.

**{¶10}** Similarly, our jurisdiction over the court's "final order" finding the statute of repose unconstitutional requires us to determine issues that are intertwined with the court's decision as to the statute's constitutionality. Here, that means that we must review first whether the claims are medical claims. If they are not medical claims, the medical statute of repose does not apply, and we do not reach the issue of constitutionality. *See Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54 ("courts decide constitutional issues only when absolutely necessary"). Conversely, if the claims are medical claims, the statute of repose will apply only if we conclude that it is constitutional. Other issues—the merits of the claims, for example—are not intertwined with our review of the statute of repose, so we do not have authority to consider them. Thus, we will review the trial court's determination that the claims against The Christ Hospital were not medical claims as a part of our review of the constitutionality of the medical statute of repose. We will not consider the court's determinations about the merits of the OCSPA and product-liability claims.

**{¶11}** The trial court also opined that Ohio's peer-review-immunity statute, R.C. 2305.251, was unconstitutional because it improperly protects hospitals from liability. Under the statute, hospitals are immune from liability for decisions or acts done within the scope of a peer-review committee's professional-credentialing or quality-review functions. *See* R.C. 2305.251. The trial court's decision was remarkable because the Youngs had not asked for summary judgment on the issue, because The Christ Hospital's motion to dismiss was not premised on its immunity under the peer-review statute, and because authority in other districts is to the contrary. On appeal, the Youngs have made no attempt to defend the court's decision. Indeed, they represented at oral argument that they were abandoning the claim.

{¶12} Recognizing the shaky foundation upon which the trial court's peer-review holding was premised, the dissent is eager to reach the issue. But we are a court whose jurisdiction is limited by the Ohio Constitution: we may only consider "final orders." Ohio Constitution, Article IV, Section 3(B)(2). There is no jurisdictional statute that authorizes us to review the court's decision as to the peer-review-immunity statute, R.C. 2305.251, at this juncture. Unlike decisions as to the constitutionality of the statute of repose, the legislature has declined to define such decisions as "final orders," such that immediate appellate review is available.

{¶13} In an attempt to find a "final order" so that it may reach the peer-review-immunity issue, the dissent looks to R.C. 2305.252(A). R.C. 2305.252(A) is a provision that provides generally for the confidentiality of peer-review proceedings. It contains a special jurisdictional provision that "an order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order." R.C. 2305.252(A). Relying upon this statute, the dissent insists we should go ahead and reach the court's decision as to the constitutionality of the peer-review-immunity statute.

{¶14} There are two flaws in the dissent's logic. Most basically, it glosses over the fact that R.C. 2305.251 and 2305.252(A) are two separate statutory provisions. The court's finding of unconstitutionality dealt not with R.C. 2305.252(A) (the confidentiality provision) but with R.C. 2305.251 (the provision providing immunity to hospitals for actions taken by peer-review committees). Nowhere in its opinion did the court hold that 2305.252(A) was unconstitutional, only R.C. 2305.251. Nothing in the special jurisdictional grant provided by R.C. 2305.252(A) even comes close to authorizing this court to review the trial court's finding that the peer-review-committee immunity provided in R.C. 2305.251 is unconstitutional. Under the plain language of

R.C. 2305.252(A), the trial court's order finding the peer-review-immunity statute unconstitutional is not final because it was not an order "to produce" peer-review materials "for discovery or use at trial." Thus, even if we were to accept the dissent's suggestion that the trial court's order be read as requiring the production of documents, we still would not have jurisdiction to consider the trial court's decision finding R.C. 2305.251 unconstitutional.

{¶15}   At most, if we accept the dissent's logic, we may only review the trial court's decision to the extent it ordered the production of peer-review materials. But even here, the dissent would take us beyond the boundaries of our jurisdiction. The court did not order any "proceedings or records" to be produced. *See* R.C. 2305.252(A). What the court did say was "for Ms. Young to prove her claims * * * she must have access to all information that reasonably relates to the physician's conduct, and there is no better evidence that a physician engaged in negligent conduct with his patients than that contained in the physician's peer review file."[3] While such a comment suggests that the court might have been likely to order production in the future (something that is now highly unlikely given the disposition in this case), it decidedly was not an order "to produce for discovery or for use at trial." Indeed, courts routinely have found that pronouncements that fall short of ordering the production of documents do not qualify as final orders. *See Giusti*, 9th Dist. Summit No. 24023, 2008-Ohio-4333. *See also Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554 (court's order for production of records for in camera review not a final order under R.C. 2305.252(A)).

---

[3] The dissent takes the "must have access" portion of this quote and melds it together with the court's statement two paragraphs later that "discovery in this matter shall proceed" to suggest that somehow the court issued an order requiring the production of peer-review materials.

{¶16} The dissent's desire to reach the issue is understandable given the brazenness of the trial court's decision. But to stretch the limits of our constitutional authority in such a manner would ultimately do more harm than good. Such a result would undoubtedly be used as precedent by litigants who sought immediate review of other hypothetical discovery disputes. This expansive approach is directly contrary to the rationale of the final-judgment rule, which is grounded in the avoidance of piecemeal appeals and the unnecessary protraction of litigation. *See Gardner v. Ford,* 1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, ¶ 3. As tempting as it is to reach the issue, fidelity to our constitutional limitations precludes us from doing so at this juncture.

### IV. West Chester Hospital/UC Health's Standing to Appeal

{¶17} There is another preliminary matter that also must be addressed. The Youngs challenge West Chester Hospital/UC Health's standing to appeal from the court's decision because the hospital did not move to dismiss the claims against it. The trial court considered only the individual claims against The Christ Hospital and the constitutionality of the statute of repose and the peer-review statute. To establish standing to appeal, a party "must have a present interest in the subject-matter of the litigation and must be aggrieved or prejudiced by the judgment, order or decree." *Ohio Contract Carriers Assn. v. Pub. Util. Comm. of Ohio*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942), citing 2 American Jurisprudence, Section 149, at 941 (1938). Here, West Chester Hospital/UC Health has been aggrieved by the court's decision finding the statute of repose unconstitutional. If the trial court's decision stands, it will not be able to use the statute of repose as a defense. Thus, West Chester/UC Health had standing to appeal the court's order.

### V. Medical Claims

{¶18}    We turn to the issues challenged by the hospitals.  Our first inquiry is whether the claims against The Christ Hospital are medical claims.   In its first assignment of error, the hospital asserts that the trial court erred when it denied the motion to dismiss because all of the claims against the hospital, except for the spoliation claim, are medical claims subject to a one-year statute of limitations and the four-year medical statute of repose.  West Chester Hospital/UC Health makes the same assertion in its third assignment of error.

{¶19}    R.C. 2305.113(E)(3) defines a medical claim as

Any claim that is asserted in any civil action against a physician, * * *, [or] hospital * * * that arises out of the medical diagnosis, care, or treatment of any person.  'Medical claim' includes the following:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i)  The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

Guided by the statute, we consider the claims alleged against The Christ Hospital.

{¶20}    In their negligence claim, the Youngs alleged that the hospital breached its duty to Ms. Young

11

by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under the same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment * * *, including but not limited to improper selection for surgery, improper performance of the surgery, improper assistance during [the] surger/ies [sic] and improper follow up care addressing a patient's concerns.

Everything alleged in the claim "arises out of the medical diagnosis, care, or treatment" of Ms. Young, so we conclude that the negligence claim is a medical claim. *See* R.C. 2305.113(E)(3).

{¶21} Similarly the Youngs' claim for negligent credentialing and retention is a medical claim because it results from the "hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment." R.C. 2305.113(E)(3)(b)(ii). Likewise, the claim for loss of consortium falls within the definition of medical claim because it is a "derivative claim[] for relief that arise[s] from the plan of care, medical diagnosis, or treatment of a person." R.C. 2305.113(E)(3)(a) and (E)(7).

{¶22} Less clear are the remaining three claims against The Christ Hospital—claims for fraud, violation of the OCSPA and product liability. Our task in determining the appropriate limitations period for these claims is to look "to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶23} In *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, we confronted the question of whether a claim designated as a fraud claim was actually a medical claim. There, the plaintiff—another patient of Dr. Durrani—sought to

12

amend her complaint to allege the surgeon had fraudulently "misrepresent[ed] her need for surgery, [failed] to disclose that BMP would be used and also the risks associated with BMP, and [failed] to disclose information relating to his competence to practice medicine[.]" *Id.* at ¶ 17. We held that amendment of the complaint would have been futile because the claim would be barred by the one-year medical-claim statute of limitations. *Id.* at ¶ 20. "Clever pleading cannot transform what are in essence medical claims into claims for fraud." *Id.* at ¶ 19. Here, the Youngs claimed that the hospital concealed the use of Infuse/BMP-2 and did not disclose its use in Ms. Young's consent form. According to the complaint, "Christ Hospital intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery[.]" As in *Hensley*, the claim is "simply an attack on Dr. Durrani's 'medical diagnosis' " and an allegation of lack of informed consent. *Id.* Therefore, it is a medical claim.

{¶24} Likewise, the Youngs' claim for a violation of the OCSPA is a "dressed-up" medical claim. The Youngs allege that they relied on "omissions, suppressions and concealments" by the hospital and that had they known the representations were untrue, they would not have used the hospital's services. The only representations allegedly made by the hospital went to Dr. Durrani's qualifications as a spine surgeon and the use of Infuse/BMP-2 during surgery. These representations are at the heart of the Youngs' medical-malpractice claims against Dr. Durrani—his negligence in performing the surgery and the lack of informed consent.

{¶25} Similarly, the product-liability claim is, at its core, a claim arising from the care of Ms. Young. The assertion is that The Christ Hospital did not warn Ms. Young that Infuse/BMP-2 would be used in her surgery contrary to FDA and manufacturer requirements. Again, the allegations go to whether Ms. Young had

given informed consent to the use of the substance and whether it was properly used. The trial court erred when it determined that the claims against The Christ Hospital were not medical claims. The Christ Hospital's first assignment of error and West Chester Hospital/UC Health's third assignment of error are sustained.

## V. The Constitutionality of the Medical Statute of Repose

{¶26} Having determined that the claims were medical claims, we turn to the question of whether the court erred in finding the medical statute of repose unconstitutional.

{¶27} The statute of repose provides an absolute bar prohibiting the commencement of an action on a medical claim more than four years after the act or omission on which the claim is based. R.C. 2305.113(C). If the statute applies, Young's claims against The Christ Hospital would be barred because her surgery took place in 2008, and the complaint was not filed until 2014. Ms. Young alleged in her complaint that R.C. 2305.113(C) was unconstitutional as applied to her because it denied her the right to redress injury and due process under the Ohio Constitution, Article 1, Section 16 and the First Amendment to the United States Constitution.

{¶28} The constitutionality of a medical statute of repose has been the subject of considerable debate in Ohio. The Ohio Supreme Court invalidated a previous version of the statute in *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987). The court determined that the statute violated the right-to-a-remedy provision of Ohio Constitution, Article I, Section 16 because it barred "the claims of medical malpractice [of] plaintiffs who did not know or could not reasonably have known of their injuries." *Id.* at syllabus. The court reconsidered its position in 2012 when it reviewed the current version of the statute. *See* R.C. 2305.113(C); *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291. In *Ruther*, the trial court and appellate court had

declared the medical statute of repose unconstitutional as applied to a plaintiff who discovered alleged malpractice ten years after tests were performed. The courts grounded their decisions on the reasoning of *Hardy*. But the Ohio Supreme Court overruled *Hardy* and held that R.C. 2305.113(C) was constitutional. *Ruther* at syllabus. The court reasoned that the legislature "has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the action, or by placing a time limit after which an injury is no longer a legal injury." *Id.* at ¶ 14. The statute, the court concluded, "does not bar a vested cause of action, but prevents a cause of action from vesting more than four years after the breach of the duty of care." *Id.* at ¶ 18.

{¶29} Notwithstanding the Ohio Supreme Court's holding in *Ruther*, the trial court in the case before us determined that R.C. 2305.113(C) was unconstitutional. The court explained that just as the Ohio Supreme Court had decided it could reconsider its decision in *Hardy* because there was a new version of the statute, it could do the same. The trial court took particular issue with the Ohio Supreme Court's failure to mention that R.C. 2305.113(C) did not contain an exception for fraud as did other states' statutes that the Supreme Court had cited favorably in *Ruther*. But the trial court had no authority to effectively overrule the Ohio Supreme Court. Unless "anarchy [is] to prevail within [our] judicial system, a precedent of [a higher court] must be followed by the lower [] courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). Whether the court liked the Supreme Court's logic or not, it was bound to follow its decision. And so are we.

{¶30} Further, the trial court's reliance on the statement in *Ruther* that "a newly enacted statute warrants a fresh review on its individual merits" is misplaced.

15

Here, the statute has not changed in the three years since the Ohio Supreme Court declared it constitutional. The Ohio Supreme Court squarely held that R.C. 2305.113(C) does not violate the Youngs' right to a remedy. The trial court erred when it disregarded the dictates of the higher court.

{¶31} The Youngs also maintain that the medical statute of repose violates their First Amendment right to petition the government for redress. The Ohio Supreme Court has recognized that access to courts—"[o]ne of the most fundamental and protected rights of our judicial system"—"is preserved in both the First Amendment to the United States Constitution and Article I, Section 16 to the Ohio Constitution." *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 973 N.E.2d 832, ¶ 22. But the petition clause of the First Amendment does not provide plaintiffs with an unlimited right to file lawsuits at any time, any more than the open-courts provision does. *See Hill v. Dailey*, 557 F.3d 437, 439 (6th Cir.2009). Indeed, if that were the case any statute of repose or limitation would violate the First Amendment—a "conclusion [that] would have come as a surprise to the framers and ratifiers of the First Amendment, who in 1791 lived in a legal world filled with statutes of limitations." *Id.* Because the statute of repose does not prevent an individual from petitioning the government, just sets the time in which he must do so, it does not violate the Young' rights under the First Amendment. *Id.* at 440.

{¶32} The trial court erred when it determined the statute to be unconstitutional. The medical claims against The Christ Hospital are barred by the statute of repose. Thus, the court erred when it denied The Christ Hospital's motion to dismiss these claims. The Christ Hospital's second assignment of error and West Chester Hospital/UC Health's first assignment of error are sustained.

### VI. Conclusion

16

{¶33} We sustain The Christ Hospital's first and second assignments of error and West Chester/UC Health's first and third assignments of error. The remaining assignments of error are dismissed because we lack authority to consider them. We reverse the trial court's judgment to the extent it held the statute of repose unconstitutional and to the extent that it denied The Christ Hospital's motion to dismiss the claims against it. We remand the case for dismissal of the medical claims against The Christ Hospital and for further proceedings consistent with law and this opinion.

Judgment accordingly.

MOCK, J., concurs.

FISCHER, P.J., concurs in part and dissents in part.

FISCHER, P.J., concurring in part and dissenting in part.

{¶34} I concur with the majority's opinion in all respects, except with regard to the majority's determination that this court lacks jurisdiction to entertain The Christ Hospital's third assignment of error and West Chester Hospital/UC Health's second assignment of error, challenging the trial court's determination that Ohio's peer-review statute is unconstitutional. In its order denying The Christ Hospital's motion to dismiss, the trial court declared that the peer-review immunity provided in R.C. 2305.251 is unconstitutional and also declared that the Youngs must have access to the physician's peer-review file. The Christ Hospital and West Chester Hospital/UC Health appealed the trial court's order with respect to the peer-review issue, but the majority declines to review the issue after determining that the constitutionality of the peer-review statute is not "intertwined" with its review of the constitutionality of the statute of repose, and thus concludes that this court lacks jurisdiction to review the issue.

{¶35} Ohio's peer-review privilege statutes are found in R.C. 2305.25 et seq. Prior to April 2003, plaintiffs had a qualified ability to access information in a peer-review file under former R.C. 2305.251. *Bailey v. Manor Care of Mayfield Hts.*, 2013-Ohio-4927,

4 N.E.3d 1071, ¶ 21 (8th Dist.). However, the General Assembly revised R.C. 2305.251 in April 2003, and it was subsequently renumbered to current R.C. 2305.252. *Id.* R.C. 2305.252 now provides that "[p]roceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery * * *." The statute further provides that "[a]n order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order." R.C. 2305.252. "This change in law 'manifested the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings.' " *Bailey* at ¶ 21, quoting *Tenan v. Huston*, 165 Ohio App.3d 185, 190, 2006-Ohio-131, 845 N.E.2d 549, ¶ 23 (11th Dist.).

{¶36} The trial court's order here not only declares the peer-review statute unconstitutional, but also declares that the Youngs must have access to the physician's peer-review file and that "[d]iscovery in this matter should proceed * * *." In seeking our review of the trial court's ruling on the peer-review issue, The Christ Hospital argues that it "would lack any remedy against the production of privileged peer review materials during discovery." I agree. While I recognize the trial court's order was not made in response to a discovery dispute, the trial court's declaration that Ohio's peer-review statute is unconstitutional removed any protection that The Christ Hospital may have had over its peer-review material during discovery.

{¶37} This court has held that where an order "rejected any safeguards" that a party had over its privileged material, that order is immediately appealable. *See Lambda Research v. Jacobs*, 170 Ohio App.3d 750, 755, 2007-Ohio-309, 869 N.E.2d 39 (1st Dist.); *State ex rel. Ohio Academy of Nursing Homes, Inc. v. Ohio Dept. of Medicaid*, 10th Dist. Franklin No. 16AP-102, 2016-Ohio-1516, ¶ 9 ("[a]n order that compels the final and unfettered discovery of privileged material, even if that discovery has yet to take place

pursuant to the order, has effectively determined the action * * *."). To require The Christ Hospital to wait until a later date to assert its privilege, as the majority holds, would be feckless where the trial court has ruled that The Christ Hospital has none.

{¶38} I have consistently held that an appellate court in Ohio should not exercise jurisdiction where none exists. *See Eismann v. Std. Fire Ins. Co.*, 1st Dist. Hamilton No. C-150342, 2016-Ohio-1041; *Strohm v. Strohm*, 1st Dist. Hamilton No. C-130698, 2014-Ohio-3405; *Daudistel v. Village of Silverton*, 1st Dist. Hamilton No. C-120611, 2013-Ohio-2103; *In re I.B.*, 1st Dist. Hamilton No. C-120116, 2012-Ohio-4547; *Hadassah v. Schwartz*, 1st Dist. Hamilton No. C-110699, 2012-Ohio-3910; *Brantley v. Title First Agency, Inc.*, 1st Dist. Hamilton No. C-110480, 2012-Ohio-766; *Whitley v. Progressive Cas. Ins. Co.*, 1st Dist. Hamilton Nos. C-110157 and C-110168, 2012-Ohio-329. However, where case law from this court and elsewhere in Ohio holds that an order removing any safeguards for privileged material during discovery is immediately appealable, and where the trial court's order not only lacks safeguards for The Christ Hospital's peer-review privilege during the discovery process, but also denies The Christ Hospital the right to assert the peer-review privilege, this court should accept jurisdiction under R.C. 2305.252. Therefore, because of the broadly-worded and far-reaching nature of the trial court's order, I would reach the merits of the trial court's ruling on the peer-review issue.

{¶39} As to the merits, the trial court acted without authority in declaring Ohio's peer-review statute unconstitutional—even the Youngs in their appellate brief and at oral argument made no effort to defend the trial court's ruling on the constitutionality of the peer-review statutes. *See Gates v. Brewer*, 2 Ohio App.3d 347, 442 N.E.2d 72 (10th Dist.1981) (upholding former R.C. 2305.251 against a constitutional challenge that the statute violated plaintiffs' rights to access to courts and due process of law); *Filipovic v. Dash*, 5th Dist. Stark Nos. 2005CA00209 and

2005CA00211, 2006-Ohio-2809. The majority appears to agree with me. Although the majority holds that it is constitutionally required to abstain from reaching the merits of the trial court's ruling on the peer-review issue, it nevertheless calls the trial court's decision "remarkable," "brazen[]," and "shaky." The majority additionally implies that this court need not be concerned with reaching the peer-review issue because the plaintiffs have represented at oral argument before this court that they will abandon the underlying claim.

{¶40}   Because I would reach the peer-review issue, I respectfully dissent from that limited portion of the majority's opinion that declines to reach the issue, and I would sustain The Christ Hospital's third assignment of error and West Chester Hospital/UC Health's second assignment of error.

Please note:

The court has recorded its own entry on the date of the release of this opinion.